58 F.Supp. 972 (1945)
FIRST NAT. BEN. SOC.
v.
GARRISON, Insurance Com'r of California, et al.
Civil Action No. 3895 O'C.
District Court, S. D. California, Central Division.
January 16, 1945.
*973 *974 *975 Earl Blodgett, of Los Angeles, Cal., and Robert R. Weaver, of Phoenix, Ariz., for plaintiff.
Robert W. Kenny, Atty. Gen., of California, and T. A. Westphal, Jr., Deputy Atty. Gen., for defendants.
J. F. T. O'CONNOR, District Judge.
In the above entitled action, the First National Benefit Society, a non-profit corporation organized and existing under the laws of the State of Arizona, the plaintiff herein, has filed in this court, under date of September 23, 1944, a complaint for an injunction against Maynard Garrison, Insurance Commissioner of the State of California, and H. F. Risbrough, Mae Barr Long and three Does as Deputy Insurance Commissioners of the State of California and Alvin J. O'Lein and Does IV and V, individually, alleging that it is a non-profit corporation duly organized and existing under and by virtue of the laws of the State of Arizona and operating by virtue of a certificate of authority from the Arizona Corporation Commission, that it is duly and regularly examined by the insurance department, a sub-division of the said Commission, at least once yearly, and is authorized by law to issue benefit certificates and is engaged exclusively in the business of furnishing benefits upon the death of its members, with its principal place of business in the City of Phoenix, Arizona, but that it has never maintained an office or agency in the State of California and has never done business in the State of California. Plaintiff further alleges that it has members in several States of the United States including many members in the State of California, and that many of them were acquired by application by mail from the member to the home office in Phoenix, Arizona; that many of them were acquired by contract of assumption from California corporations; that all applications for certificates in the plaintiff corporation are accepted or rejected in the city of Phoenix, Arizona; that all certificates of membership are issued at Phoenix, Arizona, and all premiums, dues and assessments are payable directly to the home office at Phoenix, Arizona. The complaint, after alleging the requisite jurisdictional facts, continues:
"That plaintiff has upon many occasions received inquiries from persons residing in the State of California in regard to its insurance policies or benefit certificates and has thereupon sent its representatives, also members of the said Society, to call upon persons making such inquiries; that applications have been signed by the said residents of California and thereupon forwarded to the home office for acceptance or rejection; that upon acceptance of the said applications the policies are issued at the home office at Phoenix, Arizona, and mailed directly to the insured with notice to pay all premiums at the home office; * * * that upon many occasions the defendant, Maynard Garrison, acting through his deputies, under claim of right but actually without right and in violation of the commerce clause of the Constitution of the United *976 States [Article 1, § 8, cl. 3], and repugnant to the Fourteenth Amendment of the Constitution of the United States, has interfered with the said representatives and has threatened them with prosecution if they persisted in aiding in such transactions."
The complaint then gives the names of persons who have been ordered not to assist in such transactions for plaintiff, which transactions, according to the plaintiff, constitute interstate commerce and the assistance rendered by these agents is but one step in a chain of events constituting an interstate transaction. The complaint further alleges that said defendants in the past have interfered with, and threaten to continue in the future their interference with, any representatives of plaintiff aiding in such interstate transactions to the great and irreparable injury to plaintiff; that pecuniary compensation would not afford adequate relief and that plaintiff has no plain, speedy or adequate remedy at law as it would involve a multitude of legal actions to determine the rights of agents in each individual case.
Further, the complaint continues, that plaintiff is qualified to do a life insurance business in Arizona; that there is no provision for the admission of any such company in the State of California on any basis whatsoever; that only those foreign companies which transact their life insurance business on the legal reserve basis or fraternal basis can be so qualified; that the State of California has not regulated and has no provision for the regulation of such business but has excluded all foreign companies from transacting such business within its borders but does provide for the regulation of local companies transacting that business and that the defendants have been and are continuing to discriminate against plaintiff and to interfere with its interstate transactions. (Italics supplied.)
Further continuing: "That the defendants under a claim of right, but actually wrongfully and unlawfully did write and orally counsel members of the said First National Benefit Society, and did advise said members to sever connections with the said society and forfeit their certificates therein; that said defendants advised members of said society that its certificates were `illegal' and that they were `not worth the paper they were written on', which statements are false and untrue, and that said defendants entered upon a campaign of molestation and interference with members of said plaintiff; and that plaintiff has already been damaged in the sum of one million two hundred thousand dollars."
While the complaint goes further into detail, it is believed that the foregoing enumerated facts, as alleged in the complaint, reflect a comprehensive picture of the plaintiff's contention, and will be a sufficient predicate for the fundamental principles of constitutional law which the court will apply thereto in rendering a decision in this case. The defendant Alvin J. O'Lein, sued individually, has been voluntarily dismissed from the case.
To this complaint the defendants, not as individuals, for they are not being sued as individuals, but in their legal capacities, have filed a motion to dismiss or a motion for a more definite statement under the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723, together with their points and authorities. Counsel for the plaintiff has filed his points and authorities in opposition thereto, the matter came before the court for argument and was thereupon submitted on briefs to be filed. These briefs have been filed, and the motion of the defendants to dismiss or for a more definite statement is now before the court for decision; and, for the purpose of rendering an opinion in this case, it must be assumed by the court that all of the allegations in the complaint for injunction and damages are true.
Counsel for both sides have been exceedingly helpful to the court in furnishing extensive points and authorities and briefs on this very important subject which have been quite illuminating. As the court views the facts, this case can be readily determined on three basic principles of constitutional law, namely, (1) the commerce clause of the Federal Constitution, (2) the police power, and (3) the right of a person to sue one of the United States without its consent, under the Eleventh Amendment to the Federal Constitution. The court takes judicial notice that insurance is now interstate commerce under the commerce clause of the Federal Constitution (Article I, Sec. 8, Clause 3), in accordance with the Supreme Court decision in the case of United States v. South-Eastern Underwriters Assn., 322 U.S. 533, 64 Sup.Ct. 1162, 88 L.Ed. 1440, subject to legislation by the National Congress and that thus far the National Congress has not passed any legislation on this phase of our national life as *977 a result of the foregoing decision. There being no insurance cases which have been decided subsequent to this decision that would be illuminative to the court in deciding this case, it will be necessary, in reaching a decision, to deal with analogous situations.
As to the status of the plaintiff in California, from the standpoint of the Insurance Commissioner, Maynard Garrison, counsel for the defendants in their opening brief have this to say:
"Plaintiff states in its allegations that it is a mutual non-profit benefit insurance company. Its character is clarified by plaintiff in the statement contained on page 8, lines 21-24, of its Points and Authorities in opposition to Defendant's motion to dismiss and/or motion for more definite statement that Chapter IX of the California Insurance Code being Sections 10810 to 10940 provide for California companies on a stipulated premium plan and are similar to the plan of plaintiff, * * * This description, and particularly the reference to Section 10810, can only mean that plaintiff issues death benefit certificates under a stipulated premium plan, with a right of assessment against certificate holders.
"Such a plan of operation was permitted in California, both as to foreign insurance and domestic insurers, prior to 1939, provided that certain reserves were maintained (Calif.Stats.1935, Chap. 282 [p. 1001].) Under the provisions of California statutes of 1939, Chapter 327 [p. 1663], such companies, known as Chapter 9 companies, organized prior to 1939 were and are permitted to continue in business in this State, but Section 10818 of the Insurance Code forbids any new insurer to be organized or admitted under that chapter on and after January 1, 1940, with certain exceptions not here relevant.
"This ban on Chapter 9 companies applies equally to foreign and to domestic companies so that plaintiff is not discriminated against as alleged on page 5, lines 15-17 of its complaint.
"There is, however, no ban on foreign companies or plaintiff from transacting insurance in California if they meet California standards. Plaintiff can be licensed in California if it will comply with the California Insurance Code, and particularly Section 10510. Section 10510 provides:
"`An incorporated life insurer issuing policies on the reserve basis shall not transact life insurance in this State unless it has a paid-in capital of at least two hundred thousand dollars ($200,000).'
"Paid-in capital is defined in Section 36 in part as follows:
"`(a) In the case of a foreign mutual insurer not issuing or having outstanding capital stock, the value of its assets in excess of the sum of its liabilities for losses reported, expenses, taxes, and all other indebtedness and reinsurance of outstanding risks as provided by law. Such foreign mutual insurer shall not be admitted, however, unless its paid-in capital is composed of "available cash assets amounting to at least two hundred thousand dollars ($200,000)."'
"In other words, in California, foreign or domestic life companies cannot do business in this State unless this reserve requirement is met. There are no exceptions except as to companies existing and doing business in California prior to the enactment of present laws. The policy behind the law is, of course, that experience has shown that without such reserves and surplus a mutual benefit company doing business on the stipulated premium plan with right of assessment is not adequately safeguarded to insure that money will be available to pay death benefits. However, California permits such companies, foreign or domestic, operating in California prior to January 1, 1940, to continue in order to protect contracts written prior to that date. It is clear that California does not discriminate against foreign companies."
In order that plaintiff's position may likewise not be misunderstood there is also set out the reasons for its contention that it is entitled to transact an insurance business in California relying, as it does, upon the recent Supreme Court decision in the case of United States v. South-Eastern Underwriters Assn., 322 U.S. 533, 64 Sup.Ct. 1162, 88 L.Ed. 1440, without the necessity of complying with the insurance laws of the State of California. I quote:
"Now, after seventy five years, the Supreme Court, in applying the Sherman Anti-Trust Act to the South Eastern Underwriters Association, has reversed the old case of Paul vs. Virginia, and held that `insurance is commerce and where conducted across state line is interstate commerce.'
"It is then, the effect which this decision may have upon the right of the States to *978 regulate this field of interstate commerce which is involved in this case. * * *
"This case is not, as counsel says, `an attempt by a foreign insurance company to transact business in the State of California without meeting the standards of safety set by that State,' but it is the presentation of the question which everyone connected with the insurance business now knows must be presented to the Supreme Court, and that is can the State of California or any State reach out across its state lines and regulate the corporate structure, the actuarial standard, and even the bookkeeping basis as well as complete regulation of such foreign companies' business in every state in the Union, for the privilege of transacting an interstate business with the citizens of California or the state attempting to so regulate, even though such business may be small in comparison to the company's business elsewhere.
"This case does not present the question as to whether or not the laws of California will be nullified but as to whether the State of California can nullify the laws of every other state in the Union if the companies organized in those states are to do an interstate business with the citizens of that state.
"We are not contending, as counsel seems to intimate, that all state legislation is nullified.
"This entire matter revolves around the question as to whether or not the plaintiff must obtain the consent of the State of California to transact an interstate business with its citizens when that consent requires the conforming of its entire business, which is spread over every state in the Union, to the regulations of the State of California. Many regulatory measures could be enacted by a State for the protection of its citizens, without the right to require a foreign corporation to obtain the states' consent to transact an interstate business with its citizens. * * *
"Counsel then attempts on the same page to inject into (the) situation of the insurance business a requirement of an incorporated life insurer issuing policies on the reserve plan the requirement of a $200,000 capital which taken together with the following page indicates that it is a requirement for mutual benefit societies. As a matter of fact the section, 10510 applies to legal reserve life insurance companies and not to mutual benefit companies. The laws of no state in the Union require a $200,000 capital for mutual benefit societies. The California law which counsel's arguments themselves indicate have created a monopoly for local California companies now in existence require a deposit of $25,000.00 which is all of the capital requirement. A requirement which this plaintiff could meet many times over. In fact, there is no showing or contention before this court that plaintiff does not meet all the requirements which counsel has indicated are necessary except the one of asking the State of California for permission to do an interstate business with its citizens. Counsel says it is the policy of the law that the $200,000 reserve requirement be met. He does not know what reserve requirement this plaintiff can or does meet. He only knows that it has transacted business across state lines with its citizens which does not constitute doing an intrastate business in California, without asking the permission of the State of California.
"The very sections which counsel cites as setting up these requirements are a part of the Chapters setting out, among others, requirements of investment values in the insurance policies provided for in these Chapters which make the larger reserve necessary. Furthermore the laws of the State of Arizona under which plaintiff is transacting its business, Sections (Amended 1943) 53601 of the 1939 Arizona Code prohibit plaintiff from issuing such policies so that all counsel is saying is that if plaintiff will ignore the laws of the state under which it is organized and in fact if it will violate those laws and comply with laws of California enacted for entirely different types of companies it can be admitted to do business in California."
The court deems it advantageous to set out the contention of each side, in extenso, as to the construction to be placed upon the California code sections in view of the fact that counsel are in disagreement thereon; but the court does not consider a conciliation necessary on this particular point for the fundamental question for solution is whether the State of California, under its police power, and consonantly with the decision of the Supreme Court in United States v. South Eastern Underwriters Association et al., supra, holding that insurance is interstate commerce, can still prohibit the plaintiff from conducting an insurance business in California without complying with its local laws? The court prefers *979 to decide this issue on broad general principles of constitutional law. Major continet in se minus. 38 C.J., p. 339.

Status of Law Prior to the Decision of the Supreme Court of the United States in case of United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440.

Prior to the decision of United States v. South-Eastern Underwriters Ass'n, supra, decided June 5, 1944, the business of insurance was not deemed to be commerce and a State could exclude foreign insurance companies or prescribe the terms and conditions under which they could do business[1]; therefore these prior authorities are of no assistance to the court, but the case of United States v. South-Eastern Underwriters Ass'n, supra, which was a criminal prosecution of a group of fire insurance companies under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1-7, 15 note, overthrew this line of decisions of seventy five years' standing and decided for the first time that insurance is interstate commerce and the case before the court will have to be decided on that basis.
Plaintiff undoubtedly would have this court believe that as a result of that decision the plaintiff is now free for the first time to transact its insurance business in California unmolested by the laws of this State, even though the National Congress has not legislated upon the subject of insurance, of which fact this court can take judicial notice. Plaintiff contends, inferentially at least, that the police power of the State is now ineffectual as a prohibition thereof, otherwise it would not be bringing this suit for an injunction and damages. With this assumption the court cannot agree, and the case of United States v. South-Eastern Underwriters Ass'n, supra affords no ground for taking this position.
Mr. Justice Black, who wrote the majority opinion of the court, said [322 U.S. 533, 64 S.Ct. 1170]:
"Another reason advanced to support the result of the cases which follow Paul v. Virginia [1869, 8 Wall. 168] has been that, if any aspects of the business of insurance be treated as interstate commerce, `then all control over it is taken from the states and the legislative regulations which this court has heretofore sustained must be declared invalid.' (New York Life Ins. Co. v. Deer Lodge County, 231 U.S. 495, 509, 34 S.Ct. 167, 58 L.Ed. 332). Accepted without qualification, that broad statement is inconsistent with many decisions of this court. It is settled that, for constitutional purposes, certain activities of a business may be intrastate and therefore subject to state control, while other activities of the same business may be interstate and therefore subject to federal regulation (see e. g. Crutcher v. Kentucky, 141 U.S. 47, 59-61, 11 S.Ct. 851, 35 L.Ed. 649; Atlantic Refining Co. v. Virginia, 302 U.S. 22, 26, 58 S.Ct. 75, 82 L.Ed. 24; McGoldrick v. Berwind-White Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876). And there is a wide range of business and other activities which, though subject to federal regulation, are so intimately related to local welfare that, in the absence of Congressional action, they may be regulated or taxed by the states." (Italics supplied.)[2]
*980 In other words, Mr. Justice Black did not deny that under the interstate commerce clause of the Federal Constitution, in the wide range of business and other activities, they are so intimately related to local welfare that, in the absence of Congressional action, they may be regulated or taxed by the States. In the present case for decision, however, taxation is not involved and, therefore, will not be discussed.
The defendants must necessarily concede that insurance is now interstate commerce in view of the decision of this Supreme Court in the aforementioned case of United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 Sup.Ct. 1162, 88 L.Ed. 1082, and the court will assume that fact for all purposes, but they contend that, under the police power of the State of California, and until Congress has legislated on the subject of insurance, the laws of California regulating the admission of foreign insurance companies to transact business in this State still control, so the exploration of the court into the realm of law will necessarily be along these lines.

Police power of the States.
What is the police power? According to the Tenth Amendment to the Constitution of the United States, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people," and the police power of the States is reserved in the Constitution itself, made all the more emphatic, however, by this Amendment.
"The reservation to the States respectively can only mean the reservation of the rights of sovereignty which they respectively possessed before the adoption of the Constitution of the United States, and which they had not parted from by that instrument." Gordon v. United States, 1864, 117 U.S. 697, 705. See also United States ex rel. Turner v. Williams, 1904, 194 U.S. 279, 295, 24 S.Ct. 719, 48 L.Ed. 979; United States v. Butler, 1936, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.
"It is a familiar rule of construction of the Constitution of the Union, that the sovereign powers vested in the State governments by their respective constitutions, remained unaltered and unimpaired, except so far as they were granted to the government of the United States. That the intention of the framers of the Constitution in this respect might not be misunderstood, this rule of interpretation is expressly declared in the tenth article of the amendments." (Buffington (Collector) v. Day, 1871, 11 Wall. 113, 124, 20 L.Ed. 122; "[and such article] added nothing to the instrument as originally ratified and has no limited and special operation * * * upon the people's delegation by article 5 of certain functions to the Congress," United States v. Sprague, 1931, 282 U.S. 716, 733, 51 S.Ct. 220, 223, 75 L.Ed. 640, 71 A.L.R. 1381.
"* * * a state has the same undeniable and unlimited jurisdiction over all persons and things, within its territorial limits, as any foreign nation; where that jurisdiction is not surrendered or restrained by the constitution of the United States. That, by virtue of this, it is not only the right, but the bounden and solemn duty of a state, to advance the safety, happiness and prosperity of its people, and to provide for its general welfare, by any and every act of legislation, which it may deem to be conducive to these ends; where the power over the particular subject, or the manner of its exercise is not surrendered or restrained, in the manner just stated. That all those powers which relate to merely municipal legislation, or what may, perhaps, more properly be called internal police, are not thus surrendered or restrained; and that, consequently, in relation to these, the authority of a state is complete, unqualified, and exclusive." City of New York v. Miln, 1837, 11 Pet. 102, 138, 139, 9 L.Ed. 648.
The Fourteenth Amendment does not limit the subjects upon which the police power of the State may be exerted. Minneapolis & St. L. R. Co. v. Beckwith, 1889, 129 U.S. 26, 9 S.Ct. 207, 32 L.Ed. 585; Davis v. Massachusetts, 1897, 167 U.S. 43, 17 S.Ct. 731, 42 L.Ed. 71. See also Sanitary District v. United States, 1925, 266 U.S. 405, 427, 45 S.Ct. 176, 69 L.Ed. 352, citing Texas & N. O. R. Co. v. Miller, 1911, 221 U.S. 408, 414, 31 S.Ct. 534, 55 L.Ed. 789; Atlantic Coast Lines R. Co. v. City of Goldsboro, 1914, 232 U.S. 548, 558, 34 S.Ct. 364, 58 L.Ed. 721; Denver & R. G. R. Co. v. Denver, 1919, 250 U.S. 241, 244, 39 S.Ct. 450, 63 L.Ed. 958.
It is thoroughly established that the inhibitions of the Constitution upon the deprivation of property without due process of law by the States are not violated by the legitimate exercise of legislative power in securing the public safety, health and morals. *981 New York & N. E. R. Co. v. Bristol, 1894, 151 U.S. 556, 567, 14 S.Ct. 437, 38 L.Ed. 269. See also Barbier v. Connolly, 1885, 113 U.S. 27, 58 S.Ct. 357, 28 L.Ed. 923; Ex parte Kemmler, 1890, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519; Ex parte Converse, 1891, 137 U.S. 624, 11 S.Ct. 191, 34 L.Ed. 796; Giozza v. Tiernan, 1893, 148 U.S. 657, 13 S.Ct. 721, 37 L.Ed. 599; Howard v. Kentucky, 1906, 200 U.S. 164, 26 S.Ct. 189, 50 L.Ed. 421.
The police power of a State embraces regulations designed to promote the public convenience or the general prosperity as well as those to promote public safety, health, or morals, and is not confined to the suppression of what is offensive, disorderly, or unsanitary, but extends to what is for the greatest welfare of the State. Bacon v. Walker, 1907, 204 U.S. 311, 27 S.Ct. 289, 51 L.Ed. 499. See also California Reduction Co. v. Sanitary Reduction Works, 1905, 199 U.S. 306, 318, 26 S.Ct. 100, 50 L. Ed. 204; Chicago B. & Q. R. Co. v. Illinois ex rel. Drainage Commissioners, 1906, 200 U.S. 561, 592, 26 S.Ct. 341, 50 L.Ed. 596, 4 Ann.Cas. 1175; Western Turf Ass'n v. Greenburg, 1907, 204 U.S. 359, 363, 27 S. Ct. 384, 51 L.Ed. 520; House v. Mayes, 1911, 219 U.S. 270, 31 S.Ct. 234, 55 L.Ed. 213; Chicago, B. & Q. R.Co. v. McGuire, 1911, 219 U.S. 549, 568, 569, 31 S.Ct. 259, 55 L. Ed. 328; Eubank v. Richmond, 1912, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156, 42 L. R.A.,N.S., 1123; Schmidinger v. Chicago, 1913, 226 U.S. 578, 33 S.Ct. 182, 57 L.Ed. 364; Sligh v. Kirkwood, 1915, 237 U.S. 52, 58-59, 35 S.Ct. 501, 59 L.Ed. 835; Chicago & Alton R. Co. v. Tranbarger, 1915, 238 U.S. 67, 35 S.Ct. 678, 59 L.Ed. 204; Nebbia v. New York, 1934, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; Near v. Minnesota ex rel. Olson, 1931, 283 U.S. 697, 707, 51 S.Ct. 625, 75 L.Ed. 1357; Nashville, C. & St. L. R. Co. v. Walters, 1935, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949.
Laws which are passed by the States and in the exertion of their police power, not in conflict with laws of the National congress upon the same subject, and indirectly affecting interstate commerce (italics supplied), are nevertheless valid laws.[3]
There can be no question but that the State has the right, under its Police Power, to interfere with interstate commerce.
There is an exception to the commerce clause of the Constitution in favor of the police power of the States. That power is sufficient to enable the states to provide for the security of the lives, health, and comfort of its citizens, and as a part of that power the states may regulate or restrict the sale of articles deemed injurious to the health or morals of the community. But in exercising this power the states cannot impose taxes on persons passing through the state, nor upon property imported, so long as it is in the original package, and no regulation can be made directly affecting interstate commerce. Moog v. State, 145 Ala. 75, 41 So. 166, 168; citing Robbins v. Taxing Dist. Shelby County, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694.
The police power, however, has its limits and must stop when it encounters the prohibitions of the Federal Constitution.[4] The police power is the least limitable of the exercises of government;[5] and its limitations are hard to define;[6] are not susceptible of circumstantial precision;[7] cannot be determined by any formula;[8] and must always be determined with appropriate *982 regard to the particular subject of its exercise.[9]
Though obligations of contracts must yield to a proper exercise of the police power, and vested rights cannot inhibit the proper execution of the power, it must be exercised for an end which is in fact public and the means adopted must be reasonably adapted to the accomplishment of that end and must not be arbitrary or oppressive.[10] The police power may be exerted, when otherwise the effect may be to invade rights guaranteed by the Fourteenth Amendment, only when such legislation bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare.[11] The general rule is that if regulation goes too far it will be recognized as a taking for which compensation must be paid.[12]
Each exertion of the police power has the support of the presumption that it is an exercise in the interest of the public, and that there are facts justifying its specific exercise. Erie R. Co. v. Williams, 1914, 233 U.S. 685, 699, 34 S.Ct. 761, 58 L.Ed. 1155, 51 L.R.A.,N.S., 1097. The presumption attaches alike to statutes, municipal ordinances, and orders of administrative bodies. Pacific States Box & Basket Co. v. White, 1935, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853.
While it is the duty of the Federal courts to see to it that the constitutional rights of the citizen are not infringed by the State, they should not strike down an enactment or regulation adopted by the State under its police power unless it be clear that the declaration of public policy contained in the statute is plainly in violation of the Federal Constitution.[13]The legislation, when dealing with a subject within the police power, must be upheld unless shown to be clearly unreasonable, arbitrary, or discriminatory (italics supplied).[14] The broad words of the Fourteenth Amendment are not to be pushed to a drily logical extreme, and the courts will be slow to strike down as unconstitutional legislation enacted under the police power.[15]
It is well established that when a State exerting its recognized authority undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective.[16] Reasonableness is the test of police power, not scientific precision.[17] A regulation will not be declared invalid because a court may regard it as ineffectual, or harsh in particular instances or in aid of an objectionable policy.[18]
Where legislative action is within the scope of the police power, fairly debatable questions as to its reasonableness, wisdom, and propriety are not for the determination of courts, but for that of the legislative body on which rests the duty and responsibility of decision.[19]
*983 Tradition and habits of the community count for more than logic in determining the constitutionality of laws enacted for the public welfare under the police power.[20] The fact that a practice is of ancient standing in a State is a reason for holding it unaffected by the Fourteenth Amendment;[21] and the amendment does not override public rights, existing in the form of servitudes or easements which are held by the courts of a State to be valid under its constitution and laws.[22]
A statute is not invalid under the Constitution because it might have gone farther than it did, or because it may not succeed in bringing about the result that it tends to produce. Roschen v. Ward, 1929, 279 U.S. 337, 49 S.Ct. 336, 73 L.Ed. 722. When a state legislature has declared that, in its opinion, the policy of the State requires a certain measure, its action should not be disturbed by the courts under the Fourteenth Amendment unless they can clearly see that there is no reason why the law should not be extended to classes left untouched. Williams v. Arkansas, 1910, 217 U.S. 79, 30 S.Ct. 493, 54 L.Ed. 673, 18 Ann.Cas. 865.

The Commerce Clause (Article I, Sec. 8, Clause 3, United States Constitution.)
In contrast to the authority of the State, under its inherent police power, to regulate its internal affairs, which power has never been delegated to the Federal government, either expressly or by implication, we have an express power given to Congress "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes" (Article I, Sec. 8, Clause 3, of the Federal Constitution); and, as insurance has now been judicially determined to be interstate commerce, the question that presents itself is this: Just how far have the States, under their police power been divested of authority to make laws for the health, protection and happiness of their citizens in the regulation of insurance companies, bearing in mind that, as of this date, no federal legislation has been passed on this subject.
In general, it may be said that Congress, under the commerce clause of the federal constitution, has the power to occupy, by legislation, the whole field of interstate commerce (Champion v. Ames (Lottery case), 1903, 188 U.S. 321, 358, 23 S.Ct. 321, 47 L.Ed. 492) and that whether the power in any given case is vested exclusively in the Federal Government depends upon the nature of the subject to be regulated, Gilman v. Philadelphia, 1866, 3 Wall. 713, 727, 18 L.Ed. 96; and that it is only direct interference with the freedom of interstate commerce that brings a case within the exclusive domain of federal legislation (Field v. Barbar Asphalt Paving Co., 1904, 194 U.S. 618, 623, 24 S.Ct. 784, 48 L.Ed. 1142).
A collation of the authorities, dealing, on the one hand with the exercise of the police power by the States and, on the other hand, the authority of Congress to exercise its powers to legislate on interstate commerce under the Commerce clause of the United States constitution, indicates that nine basic postulates may be considered in reaching a decision in the instant case.

Postulate one:
Consistent with the power of Congress to regulate commerce among the States, the States possess, because they have never surrendered, the power to protect the public health, the public morals, and public safety, by any legislation appropriate to that end which does not encroach upon rights guaranteed by the National constitution, nor come in conflict with the acts of Congress passed in pursuance of that instrument;[23] but the police *984 power of the State cannot draw within its jurisdiction subject matter which has been delegated to Congress exclusively by the Constitution.[24]

Postulate two:
It is a well-established principle that Congress may circumscribe its regulation of interstate commerce and occupy a limited field, and the intent to supersede the exercise by the State of its police power as to matters not covered by the Federal legislation is not to be implied unless the latter fairly interpreted is in actual conflict with the state law.[25]

Postulate three:
The principle that a State may enact local laws under its police power in the interest of the welfare of the people, although they affect interstate commerce, and that such laws may stand at least until Congress takes possession of the field under its superior authority to regulate such commerce, has no application where the State passes beyond the exercise of its legitimate authority, and undertakes to regulate interstate commerce by imposing burdens upon it.[26]

Postulate four:
Where the power of Congress to regulate is exclusive, i. e., subjects national in character, the failure of Congress to make express regulations indicates its will that the subject shall be left free from any restrictions or impositions; and any regulations of the subject by the States, except in matters of local concern only, are repugnant to such freedom.[27]
*985 Postulate five: Where the subjects on which the power may be exercised are local in their nature or operation, or constitute mere aids to commerce, the authority of the State may be exerted for their regulation and management until Congress interferes and supersedes it.[28]
Postulate six: When Congress acts with reference to a matter confided to it by the Constitution, then its statutes displace all conflicting local regulations touching that matter, although such regulations may have been established in pursuance of a power not surrendered by the States to the General Government;[29]but the action of Congress must be specific in order to be paramount.[30]
Postulate seven: A law of Congress regulating commerce with foreign nations or among the several States is the supreme law, and if the law of a State is in conflict with it, the law of Congress must prevail and the State law cease to operate so far as it is repugnant.[31]
Postulate eight: When Congress exercises its exclusive powers over interstate commerce, the States cannot legislate on the subject, and the situation is covered as much by what is not done by Congress or the Interstate Commerce Commission, as by the regulations it has made, and the State has no power to fill what it may regard as a hiatus left by Congress and the Interstate Commerce Commission.[32] And
Postulate nine: Even when an act of Congress does not go into effect until a certain time following its passage, State legislation is immediately superseded upon the enactment of the Federal statute.[33]
The power which the Constitution bestows upon Congress over commerce does not exhaust the subject of the control of commerce for there is a commerce which lies beyond the power of Congress to control. The States have a commerce of their own and they are as supreme in its control as Congress is supreme in the control of interstate and foreign commerce. This has *986 never been disputed since the case of Gibbons v. Ogden, 1824, 9 Wheat. 1, 6 L.Ed. 23.[34]
The power to regulate commerce among the States is a unit, but if particular subjects within its operation do not require the application of a general or uniform system, the States may legislate in regard to them with a view to local needs and circumstances until Congress otherwise directs (italics supplied); but the power thus exercised by the States is not identical in its extent with the power to regulate commerce among the States. The power to pass laws in respect to internal commerce, inspection laws;[35] quarantine and health laws;[36] and laws in relation to bridges, ferries, and highways belongs to the class of power pertaining to locality, essential to local intercommunication, to the protection, the safety, and the welfare of society, originally necessarily belonging to, and upon the adoption of the Constitution reserved by, the States, except so far as falling within the scope of a power confided to the general government. Where the subject matter requires a uniform system as between the States, the power controlling it is vested exclusively in Congress and cannot be encroached upon by the State but where in relation to the subject matter different rules may be suitable for different localities, the States may exercise powers which, though they may be said to partake of the nature of the power granted to the Federal government, are strictly not such, but are simply local powers, which have full operation until or unless circumscribed by the action of Congress.[37] (Italics supplied.)
*987 Consistent with the power of Congress to regulate commerce the States possess, because it was reserved, the power to protect the public health, the public morals, and the public safety by any legislation appropriate to that end which does not encroach upon rights guaranteed by the National constitution nor come in conflict with acts of Congress.[38] But while a State can do nothing which will directly or indirectly[39] burden or impede interstate commerce, and the police power does not justify a direct interference with such commerce[40] it may make valid enactments in the exercise of its legislative power to promote the welfare and convenience of its citizens, although in their operation they may have an effect upon interstate commerce.[41]
Generally it may be said in respect to laws of this character that, though resting upon the police power of the State they must yield whenever Congress, in the exercise of the powers granted to it, legislates upon the precise subject matter, for *988 that power, like all other reserved powers of the States, is subordinate to those in terms conferred by the Constitution upon the Nation.[42]

Fourteenth Amendment to the Constitution of the United States:
As to the allegation of the plaintiff that Maynard Gassison, Insurance Commissioner of the State of California, acting through his deputies, has interfered with the representatives of plaintiff and threatened them with prosecution if they persisted in aiding the insurance transactions of plaintiff in California in violation of the Fourteenth Amendment to the Constitution of the United States, it is well settled that the police power may be exerted by the State, under certain limitations, of course, notwithstanding the Fourteenth Amendment. Liggett (Louis K.) Co. v. Baldridge, 1928, 278 U.S. 105, 111-112, 49 S.Ct. 57, 73 L.Ed. 204; Nobe State Bank v. Haskell, 1911, 219 U.S. 104, 31 S.Ct. 186, 55 L.Ed. 112, 32 L.R.A.,N.S., 1062, Ann.Cas.1912A, 487; Minneapolis & St. L. R. Co. v. Beckwith, 129 U.S. 29, 9 S.Ct. 207, 209, 32 L.Ed. 585.
The court finds it difficult to ascertain the exact contention of plaintiff for it concedes the power of the State, under the police power, to make local rules and regulations which indirectly interfere with interstate commerce (page 2 of brief); it states that it is "not an attempt by a foreign insurance company to transact business in the State of California without meeting the standards of safety set by that state" (page 11 of its brief); that "this case does not present the question as to whether or not the laws of California will be nullified but as to whether the state of California can nullify the laws of every other State in the Union if the companies organized in those states are to do an interstate business with the citizens of that state" (page 12 of brief); and yet plaintiff is praying for injunctive relief to prohibit the defendants from interfering with its business transactions in California, a position which is not quite clear to the court, for if it met the same standards demanded of local insurers this case would not have arisen.
Whether it is actually plaintiff's position that California at the present time has no law regulating the insurance business as conducted by the plaintiff, or that its laws in this respect are now invalidated by reason of the decision in the case of United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, makes no difference so far as the decision in this case is concerned, because the ultimate fact is that plaintiff is attempting, in any event, to transact an insurance business in California without meeting the standards of safety required by the State (58 F.Supp. 977); and there can be no doubt but that if the court sustained plaintiff's position, California laws, established under the police power for the protection of the public, would be to that extent nullified.
The court takes judicial notice of the fact that Congress has not yet legislated in insurance matters, and, until it does, and to that extent only, State statutes enacted under the police power still remain in full force and effect.
"In construing federal statutes enacted under the power conferred by the commerce clause of the Constitution the rule is that it should never be held that Congress intends to supersede or suspend the exercise of the reserved powers of a state, even where that may be done, unless, and except so far as, its purpose to do so is clearly manifested. (Cases cited.)" Illinois Central R. Co. v. Public Utilities Commission, 245 U.S. 493, 510, 38 S.Ct. 170, 176, 62 L.Ed. 425. "If, reading the federal act as a whole, there were room for doubt, two established rules of construction would lead us to resolve the doubt in favor of sustaining the validity of the state law. First. The intent to supersede the exercise by a state of its police powers is not to be implied unless the act of Congress fairly interpreted is in actual conflict with the law of the state." (Cases cited.) Carey v. State of South Dakota, 250 U.S. 118, 122, 39 S.Ct. 403, 404, 63 L.Ed. 886.
"The principle thus applicable has been frequently stated. It is that Congress may *989 circumscribe its regulation and occupy a limited field, and that the intention to supersede the exercise by the state of its authority as to matters not covered by the federal legislation is not to be implied unless the Act of Congress fairly interpreted is in conflict with the law of the State." (Cases cited.) Atchison R. v. Railroad Commission, 283 U.S. 380, 392, 51 S.Ct. 553, 556, 75 L.Ed. 1128.
"The case calls for the application of the well-established principle that Congress may circumscribe its regulation and occupy a limited field, and that the intent to supersede the exercise by the state of its police power as to matters not covered by the federal legislation is not to be implied unless the latter fairly interpreted is in actual conflict with the state law." (Cases cited.) Townsend v. Yeomans, 301 U.S. 441, 454, 57 S.Ct. 842, 848, 81 L.Ed. 1210.
Courts do not legislate and, a fortiori, until the National Congress does legislate in insurance matters, local statutes governing the subject are in a stronger position than where there has been Federal legislation on the subject. Mr. Chief Justice Stone, in his dissenting Opinion in the foregoing case of United States v. South-Eastern Underwriters Ass'n, supra, while he was apprehensive of the consequences that would follow the ruling in that case, nowhere gives the slightest intimation that all state laws governing insurance companies are rendered ipso facto void, but stated that those matters would have to be decided by a case-to-case determination with "a consideration of all the relevant facts and circumstances." It is conceivable that, as the Federal Congress legislates on insurance, as it may now do because it has been determined to be interstate commerce, state laws will fall, under Postulate six (58 F.Supp. 985), but only to the extent that they are supplemented by Federal legislation, and that, in the meantime, state statutes control.
Chief Justice Stone states [322 U.S. 533, 64 S.Ct. 1188]:
"* * * the ruling that insurance is not commerce, and is therefore unaffected by the restrictions which the commerce clause imposes on state legislation, removed the most serious obstacle to regulation of that business by the states. Through their plenary power over domestic and foreign corporations which are not engaged in interstate commerce, the states have developed extensive and effective systems of regulation of the insurance business, often solving regulatory problems of a local character with which it would be impractical or difficult for Congress to deal through the exercise of the commerce power. * * *
"But the immediate and only practical effect of the decision now rendered is to withdraw from the states, in large measure, the regulation of insurance and to confer it on the national government, which has adopted no legislative policy and evolved no scheme of regulation with respect to the business of insurance. Congress having taken no action, the present decision substitutes, for the varied and detailed state regulation developed over a period of years, the limited aim and indefinite command of the Sherman Act for the suppression of restraints on competition in the marketing of goods and services in or affecting interstate commerce, to be applied by the courts to the insurance business as best they may.
"In the years since this Court's pronouncement that insurance is not commerce came to be regarded as settled constitutional doctrine, vast efforts have gone into the development of schemes of state regulation and into the organization of the insurance business in conformity to such regulatory requirements. Vast amounts of capital have been invested in the business in reliance on the permanence of the existing system of state regulation. How far that system is now supplanted is not, and in the nature of things could not well be, explained in the Court's opinion. The Government admits that statutes of at least five states will be invalidated by the decision as in conflict with the Sherman Act, and the argument in this Court reveals serious doubt whether many others may not also be inconsistent with that Act. The extent to which still other statutes will now be invalidated as in conflict with the commerce clause has not been explored in any detail in the briefs and argument or in the Court's opinion.
"Certainly there cannot but be serious doubt as to the validity of state taxes which may now be thought to discriminate against the interstate commerce, cf. Philadelphia Fire Ass'n v. New York, 119 U.S. 110, 7 S.Ct. 108, 30 L.Ed. 342; or the extent to which conditions may be imposed on the right of insurance companies to do business within a state; or in general the extent to which the state may regulate whatever aspects of the business are now for the first time to be regarded as interstate commerce. *990 While this Court no longer adheres to the inflexible rule that a state cannot in some measure regulate interstate commerce, the application of the test presently applied requires `a consideration of all the relevant facts and circumstances' in order to determine whether the matter is an appropriate one for local regulation and whether the regulation does not unduly burden interstate commerce, Parker v. Brown, 317 U.S. 341, 362, 63 S.Ct. 307, 319, 87 L.Ed. 315a determination which can only be made upon a case-to-case basis. Only time and costly experience can give the answers."
Mr. Chief Justice Stone's apprehension that the decision in United States v. South Eastern Underwriters Ass'n, supra, would open wide the door to determine just how far State laws controlling insurance under the police power would be subject to the commerce clause has begun to bear fruit in this case, and what the constitutional repercussions will develop over a period of years is solely within the lap of Providence to determine.
State laws regulating insurance companies, both foreign and domestic, have uniformly been upheld as a proper exercise of the police power of the State. German Alliance Ins. Co. v. Kansas, 233 U.S. 389 at page 412, 34 S.Ct. 612, 58 L.Ed. 1011, L.R.A. 1915C, 1189. It should be borne in mind that we are not dealing with a case where the State of California is prohibiting the plaintiff from transacting business under any conditions, or discriminating against the plaintiff in favor of a domestic insurance company; and that this case does not involve a tax problem.
A very narrow line divides the authority of Congress under the commerce clause of the Constitution and the power of the State under the police power. Each case stands alone. Power seldom yields its attributes of sovereignty but constantly seeks to extend its authority. The police power is the only barrier when two authorities come in conflict. The police power is incapable of exact definition, yet it comes to the rescue of laws of doubtful constitutionality, if the courts find such laws sustain public morals, good order, good manners, contribute to public health and safety, prevent evil or harm and encourage social and business intercourse and in general contribute to the "pursuit of happiness" of the people.

Suit Against a State:
The defendants also move for a dismissal of the complaint herein under the 11th Amendment to the Constitution of the United States that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State," on the theory that this suit is actually a suit against the State of California without its consent, which consent has not been obtained. The plaintiff corporation is a "citizen of another state" within the definition of the 11th Amendment to the Constitution of the United States. See Manchester Fire Insurance Co. v. Herriott, C.C. Iowa, 91 F. 711. Plaintiff cites the case of Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 875, and also ex parte State of New York, 256 U.S. 490, 497, 500, 41 S.Ct. 588, 65 L.Ed. 1057.
Plaintiff, in support of its contention that its suit is not against the State of California, cites the case of Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375 (where the court found the Governor of Texas had exceeded his authority in issuing a proclamation that martial law existed); the case of Felt & Tarrant Mfg. Co. v. Corbett, D.C.Cal., 23 F.Supp. 186 (which stated the applicable principle to be that where state officials, purporting to act under state authority, invade the rights secured by the Federal constitution, they are subject to the process of the Federal courts); and other cases, each of which has been read by the court; but these cases are either not in point on the facts in the instant case, the officers exceeded their authority, or they involve acts under unconstitutional state statutes, whereas the court in the instant case finds no similar circumstances in the motion under advisement. Where the court finds that state officers are acting under constitutional statutes such suits cannot generally be maintained.
In an action such as this, it remains the duty of the court to decide all cases brought before it by citizens of one State against citizens of a different State, where a State is not necessarily a defendant, United States v. Peters, 1809, 5 Cranch 115, 137, 3 L.Ed. 53; it must be regarded as a settled doctrine of this court, established by its decisions, that the question whether a suit is within the prohibition of the Eleventh Amendment is not always determined by reference to the nominal parties on the record, but is determined by a consideration of the nature of the case as *991 presented on the whole record (Ex parte Ayers, 1887, 123 U.S. 443, 487, 8 S.Ct. 164, 31 L.Ed. 216, distinguishing Poindexter v. Greenhow, 1885, 114 U.S. 270, 5 S. Ct. 903, 29 L.Ed. 185, 207, from Osborn v. Bank of United States, 1824, 9 Wheat. 738, 6 L.Ed. 204).
The adoption of the Eleventh Amendment to the Constitution overruled the decision of the Supreme Court of the United States written by Justice Iredell in re Chisholm v. Georgia, 1793, 2 Dall. 419, 1 L.Ed. 440, sustaining the right of a citizen to sue a State.
A suit nominally against individuals, but restraining or otherwise affecting their action as State officers, may be in substance a suit against the State which the Constitution forbids.[43] A suit against the governor solely in his official capacity to recover money in the state-treasury, was considered a suit against the state. Governor of Georgia v. Madrazo, 1828, 1 Pet. 110, 7 L.Ed. 73, confirmed in Kentucky v. Dennison, 1861, 24 How. 66, 98, 16 L.Ed. 717.
Federal jurisdiction to enjoin execution of a State law on the ground of unconstitutionality should be exercised only in clear cases and when necessary to prevent great and irreparable injury. Cavanaugh v. Looney, 1919, 248 U.S. 453, 39 S.Ct. 142, 63 L.Ed. 353; followed in Hygrade Provision Co. v. Sherman, 1925, 266 U.S. 497, 500, 45 S.Ct. 141, 69 L.Ed. 402; Massachusetts State Grange v. Benton, 1926, 272 U.S. 525, 47 S.Ct. 189, 71 L.Ed. 387. Only a case of manifest oppression will justify such interference; the reluctance of the court to interfere by injunction with the activities of State officials conscientiously endeavoring to fulfill their duty, was of itself adequate ground for refusing an injunction against certain state and county highway officials, to restrain interference with maintenance of a bridge, and collection of tolls,  a matter which depended upon the construction of the local law against perpetuities. Hawks v. Hamill, 1933, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610.
Ordinarily there should be no interference with such officers, primarily they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done. "The accused should first set up and rely upon his defense in the state court, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." Fenner v. Boykin, 1926, 271 U.S. 240, 243, 46 S.Ct. 492, 493, 70 L.Ed. 927, refusing injunction to restrain law officers from enforcing by arrest and prosecution a state law penalizing certain gambling contracts on the ground of interference with interstate commerce and deprivation of constitutional rights.
Generally, suits to restrain action of State officials can, consistently with the constitutional prohibition, be prosecuted only when the action sought to be restrained is without the authority of State law or contravenes the statutes or Constitution of the United States.[44] (Italics supplied.)
In view of the fact that this court is not holding that the State statutes in question are unconstitutional, or have been vitiated, even pro tanto, by the decision of *992 the Supreme Court of the United States in the case of United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, it must necessarily hold that this suit is against the State without its consent, in violation of the 11th Amendment to the Constitution of the United States and hence cannot be maintained. Plaintiff's theory that the cause of action can be maintained against these defendants in their official capacities is necessarily predicated upon its contention that the State statutes in question are unconstitutional, or at least have been vitiated, pro tanto, by the aforementioned Supreme Court decision, and its contention would be sound if such were the fact; but, in view of the fact that the court is holding that the State statutes in question have not been invalidated, it is believed that the plaintiff will have no quarrel with the court's ruling.
There are quite a number of authorities holding that state officers can be sued where they are acting under an unconstitutional state statute, as not being a suit against the state. For instance, suits by individuals against defendants who claim to act as officers of a State, and, under color of an unconstitutional statute, to recover for injury to property; or to recover money or property unlawfully taken from them in behalf of the State; or, for compensation for damages; or, in a proper case, for an injunction to prevent such wrong and injury; or, for a mandamus to enforce the performance of a plain legal duty, purely ministerial; are not, within the meaning of the amendment, suits against the State.[45]
An injunction against sale by a State land commissioner, under a statute adjudged unconstitutional, of swamp lands purchased under an earlier act was held not a suit against the state.[46] Furthermore, a suit against State officers to enjoin them from enforcing a tax alleged to be in violation of the Constitution of the United States is not a suit against a State within the prohibition of the Eleventh Amendment, Gunter v. Atlantic Coast Line R. Co. 1906, 200 U.S. 273, 283, 26 S.Ct. 252, 50 L.Ed. 477. This doctrine announced in many previous cases on the subject was stated by Mr. Justice Harlan, in Smyth v. Ames, wherein it was said: "It is the settled doctrine of this court that a suit against individuals for the purpose of preventing them as officers of a state from enforcing an unconstitutional enactment (italics supplied) to the injury of the rights of the plaintiff, is not a suit against the state within the meaning of that amendment." (1898, 169 U.S. 466, 518-519, 18 S.Ct. 418, 423, 42 L.Ed. 819.) See also Prout v. Starr, 1903, 188 U.S. 537, 23 S.Ct. 398, 47 L.Ed. 584; Reagan v. Farmers' Loan & T. Co., 1894, 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014.
Furthermore, a suit to restrain a State officer from executing an unconstitutional statute (italics supplied), in violation of plaintiff's rights and to his irreparable damage, is not a suit against the State, and individuals who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act violating the Federal Constitution, may be enjoined by a Federal court of equity from such action. Ex parte Young, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764. This principle is not confined to the maintenance of suits to restrain enforcement of statutes which are unconstitutional, but applies also when the attempted administration of a valid *993 statute is unconstitutional.[47] The citations of plaintiff to the effect that these defendants can be sued in their official capacities in the Federal court are based upon the theory that they are acting under an unconstitutional state statute.
In view of the foregoing decisions the court deems it unnecessary to go into the doctrine of res judicata.
In accordance with the foregoing Opinion, the court finds that the insurance statutes of the State of California, involved in this suit, have not been vitiated in any way by the decision of the Supreme Court in the case of United States v. South-Eastern Underwriters Ass'n, supra, which are still in full force and effect for the purposes of this suit; and that this is in fact a suit instituted against the State of California without its consent, in violation of the Eleventh Amendment to the Federal Constitution, and, therefore, cannot be maintained, no consent having been given thereto and the suit against Alvin J. O'Lein having been dismissed.
The defendants' motion to dismiss is granted and counsel for the defendants will prepare a judgment of dismissal with costs for the signature of the court, after having presented same to counsel for the plaintiff for approval as to form.
NOTES
[1] Paul v. Virginia, 1869, 8 Wall. 168, 19 L.Ed. 357. See also Liverpool & L. Life F. Ins. Co. v. Commonwealth of Massachusetts, 1871, 10 Wall. 566, 19 L. Ed. 1029; Fire Ass'n of Philadelphia v. New York, 1886, 119 U.S. 110, 7 S.Ct. 108, 30 L.Ed. 342; Hooper v. California, 1895, 155 U.S. 648, 655, 15 S.Ct. 207, 39 L. Ed. 297; Noble v. Mitchell, 1896, 164 U. S. 367, 17 S.Ct. 110, 41 L.Ed. 472; Allgeyer v. Louisiana, 1897, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832; New York L. Ins. Co. v. Cravens, 1900, 178 U.S. 389; Nutting v. Massachusetts, 1902, 183 U.S. 553, 556, 22 S.Ct. 238, 46 L. Ed. 324; Hartford F. Ins. Co. v. Perkins, 1903, C.C.S.D., 125 F. 502, appeal dismissed 196 U.S. 643, 1905, 25 S.Ct. 795, 49 L.Ed. 632; Security Mut. L. Ins. Co. v. Prewitt, 1906, 202 U.S. 246, 26 S.Ct. 619, 50 L.Ed. 1013, 6 Ann.Cas. 317; National Union F. Ins. Co. v. Wanberg, 1922, 260 U.S. 71, 43 S.Ct. 32, 67 L.Ed. 136; Bothwell v. Buckbee-Mears Co., 1927, 275 U.S. 274, 48 S.Ct. 124, 72 L.Ed. 277; New York L. Ins. Co. v. Deer Lodge County, 1914, 231 U.S. 495, 34 S.Ct. 167, 58 L.Ed. 332.
[2] See Gibbons v. Ogden, 9 Wheat, 1, 200, 203-210, 6 L.Ed. 23; Willson v. Black Bird Creek Marsh Co., 2 Pet. 245, 250-252, 7 L.Ed. 412; License Cases, 5 How. 504, 12 L.Ed. 256, Opinion of Mr. Chief Justice Taney, 578-586; Cooley v. Board of Wardens, 12 How. 299, 318-321, 13 L.Ed. 996; Kelly v. Washington, 302 U.S. 1, 9-10, 58 S.Ct. 87, 82 L.Ed. 3. Cf. Sturges v. Crowninshield, 4 Wheat, 122, 192-196, 4 L.Ed. 529; Houston v. Moore, 5 Wheat, 1, 5 L.Ed. 19, Opinion of Mr. Justice Story, 45-50.
[3] New York ex rel. Silz v. Hesterberg, 1908, 211 U.S. 31, 41, 29 S.Ct. 10, 53 L. Ed. 75, citing Missouri K. & T. R. Co. v. Haber, 1898, 169 U.S. 613, 18 S.Ct. 488, 42 L.Ed. 878; Pennsylvania R. Co. v. Hughes, 1903, 191 U.S. 477, 24 S.Ct. 132, 48 L.Ed. 268; Asbell v. Kansas, 1908, 209 U.S. 251, 28 S.Ct. 485, 52 L. Ed. 778, 14 Ann.Cas. 1101.
[4] Eubank v. Richmond, 1912, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156, 42 L.R. A.,N.S., 1123; Southern R. Co. v. Virginia, 1933, 290 U.S. 190, 54 S.Ct. 148, 78 L.Ed. 260; Panhandle Eastern Pipe Line Co. v. State Highway Commission, 1935, 294 U.S. 613, 622, 55 S.Ct. 563, 79 L.Ed. 1090.
[5] Hadacheck v. Sebastian, 1915, 239 U. S. 394, 36 S.Ct. 143, 60 L.Ed. 348, Ann. Cas.1917B, 927; Hall v. Geiger-Jones Co., 1917, 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480, L.R.A.1917F, 514, Ann. Cas.1917C, 643.
[6] Sligh v. Kirkwood, 1915, 237 U.S. 52, 58-59, 35 S.Ct. 501, 59 L.Ed. 835.
[7] Eubank v. Richmond, 1912, 226 U.S. 137, 142, 33 S.Ct. 76, 57 L.Ed. 156, 42 L.R.A.,N.S., 1123; Erie R. Co. v. Williams, 1914, 233 U.S. 685, 699, 34 S.Ct. 761, 58 L.Ed. 1155, 51 L.R.A.,N.S., 1097; Panhandle Eastern Pipe Line Co. v. State Highway Commission, 1935, 294 U.S. 613, 622, 55 S.Ct. 563, 79 L.Ed. 1090.
[8] Hudson County Water Co. v. McCarter, 1908, 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828, 14 Ann.Cas. 560.
[9] Near v. Minnesota ex rel. Olson, 1931, 283 U.S. 697, 707, 51 S.Ct. 625, 75 L. Ed. 1357.
[10] Treigle v. Acme Homestead Ass'n, 1936, 297 U.S. 189, 197, 56 S.Ct. 408, 80 L.Ed. 575, 101 A.L.R. 1284.
[11] Liggett (Louis K.) Co. v. Baldridge, 1928, 278 U.S. 105, 111, 112, 49 S.Ct. 57, 73 L.Ed. 204.
[12] Pennsylvania Coal Co. v. Mahon, 1922, 260 U.S. 393, 43 S.Ct. 158, 67 L. Ed. 322, 28 A.L.R. 1321.
[13] Broadnax v. Missouri, 1911, 219 U. S. 285, 292, 31 S.Ct. 238, 55 L.Ed. 219.
[14] Hadacheck v. Sebastian, 1915, 239 U. S. 394, 36 S.Ct. 143, 60 L.Ed. 348, Ann. Cas.1917B, 927; Cusack (Thomas) Co. v. City of Chicago, 1917, 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472, L.R.A.1918A, 136, Ann.Cas.1917C, 594.
[15] Noble State Bank v. Haskell, 1911, 219 U.S. 104, 31 S.Ct. 186, 55 L.Ed. 112, 32 L.R.A.,N.S., 1062, Ann.Cas.1912A, 487.
[16] Purity Extract & Tonic Co. v. Lynch, 1912, 226 U.S. 192, 201, 33 S.Ct. 44, 57 L.Ed. 184.
[17] Sproles v. Binford, 1932, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167.
[18] Bayside Fish Flour Co. v. Gentry, 1936, 297 U.S. 422, 56 S.Ct. 513, 80 L. Ed. 772.
[19] Standard Oil Co. v. Marysville, 1929, 279 U.S. 582, 584, 49 S.Ct. 430, 73 L.Ed. 856, citing Zahn v. Board of Public Works, 1927, 274 U.S. 325, 328, 47 S. Ct. 594, 71 L.Ed. 1074; Hadacheck v. Sebastian, 1915, 239 U.S. 394, 408-412, 413, 414, 36 S.Ct. 143, 60 L.Ed. 348, Ann.Cas.1917B, 927; Euclid v. Ambler Realty Co., 1926, 272 U.S. 365, 388, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Jacobson v. Massachusetts, 1905, 197 U.S. 11, 30, 25 S.Ct. 358, 49 L.Ed. 643, 3 Ann.Cas. 765; Laurel Hill Cemetery v. San Francisco, 1910, 216 U.S. 358, 365, 30 S.Ct. 301, 54 L.Ed. 515; Cusack (Thomas) Co. v. City of Chicago, 1917, 242 U.S. 526, 530, 37 S.Ct. 190, 61 L. Ed. 472, L.R.A.1918A, 136, Ann.Cas. 1917C, 594; Price v. Illinois, 1915, 238 U.S. 446, 451, 35 S.Ct. 892, 59 L.Ed. 1400. See also Purety Extract & Tonic Co. v. Lynch, 1912, 226 U.S. 192, 201-202, 33 S.Ct. 44, 57 L.Ed. 184; Erie R. Co. v. Williams, 1914, 233 U.S. 685, 704, 34 S.Ct. 761, 58 L.Ed. 1155, 51 L.R.A., N.S., 1097.
[20] Laurel Hill Cemetery v. San Francisco, 1910, 216 U.S. 358, 30 S.Ct. 301, 54 L.Ed. 515. See also Plessy v. Ferguson, 1896, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256.
[21] Jackman v. Rosenbaum Co., 1922, 260 U.S. 22, 43 S.Ct. 9, 67 L.Ed. 107.
[22] Eldridge v. Trezevant, 1896, 160 U. S. 452, 468, 16 S.Ct. 345, 40 L.Ed. 490; Vidalia v. McNeely, 1927, 274 U.S. 676, 47 S.Ct. 758, 71 L.Ed. 1292; see also St. Anthony Falls Water Power Co. v. Board of Water Commissioners, 1897, 168 U.S. 349, 18 S.Ct. 157, 42 L.Ed. 497.
[23] Missouri, K. & T. R. Co. v. Haber, 1898, 169 U.S. 613, 628, 18 S.Ct. 488, 42 L.Ed. 878. See also Gloucester Ferry Co. v. Pennsylvania, 1885, 114 U.S. 196, 215, 5 S.Ct. 826, 29 L.Ed. 158; Sioux Remedy Co. v. Cope, 1914, 235 U.S. 197, 35 S.Ct. 57, 59 L.Ed. 193; New Mexico ex rel. McLean (E. J.) & Co., v. Denver & R. G. R. Co., 1906, 203 U.S. 38, 27 S. Ct. 1, 51 L.Ed. 78; Bowman v. Chicago & N. W. R. Co., 1888, 125 U.S. 465, 489, 8 S.Ct. 1062, 31 L.Ed. 700; Robbins v. Taxing Dist. of Shelby County, 1887, 120 U.S. 489, 493, 7 S.Ct. 592, 30 L.Ed. 694; Hannibal & St. J. R. Co. v. Husen, 1878, 95 U.S. 465, 470, 24 L.Ed. 527; Lake Shore & M. S. R. Co. v. Ohio, 1899, 173 U.S. 285, 292, 19 S.Ct. 465, 43 L.Ed. 702; New York, N. H. & H. R. Co. v. New York, 1897, 165 U.S. 628, 631, 17 S.Ct. 418, 41 L.Ed. 853; Sligh v. Kirkwood, 1915, 237 U.S. 52, 35 S.Ct. 501, 59 L. Ed. 835; Southern R. Co. v. Reid, 1912, 222 U.S. 424, 32 S.Ct. 140, 56 L.Ed. 257; Houston & T. C. R. Co. v. Mayes, 1906, 201 U.S. 321, 26 S.Ct. 491, 50 L.Ed. 772; Simpson v. Shepard (Minnesota Rate Cases), 1913, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A.,N.S., 1151, Ann.Cas.1916A, 18; Mintz v. Baldwin, 1933, 289 U.S. 346, 53 S.Ct. 611, 77 L. Ed. 1245; Kelly v. Washington ex rel. Foss Co., 1937, 302 U.S. 1, 58 S.Ct. 87, 82 L.Ed. 3.
[24] Henderson v. Mayor of City of New York, 1876, 92 U.S. 259, 271, 23 L.Ed. 543.
[25] Townsend v. Yoemans, 1937, 301 U. S. 441, 454, 57 S.Ct. 842, 81 L.Ed. 1210; citing Savage v. Jones, 1912, 225 U.S. 501, 533, 32 S.Ct. 715, 56 L.Ed. 1182; Atlantic Coast Line v. Georgia, 1914, 234 U.S. 280, 293, 294, 34 S.Ct. 829, 58 L. Ed. 1312; Illinois Cent. R. Co. v. Public Utilities Commission, 1918, 245 U.S. 493, 510, 38 S.Ct. 170, 62 L.Ed. 425; Carey v. South Dakota, 1919, 250 U.S. 118, 122, 39 S.Ct. 403, 63 L.Ed. 886; Lehigh Valley R. Co. v. Public Utility Com'rs, 1928, 278 U.S. 24, 35, 49 S.Ct. 69, 73 L.Ed. 161, 62 A.L.R. 805; Atchison, T. & S. F. R. Co. v. Railroad Commission, 1931, 283 U.S. 380, 392, 393, 51 S.Ct. 553, 75 L.Ed. 1128; Hartford Accident & Indemnity Co. v. Illinois ex rel. McLaughlin, 1936, 298 U.S. 155, 158, 56 S.Ct. 685, 80 L.Ed. 1099.
[26] Lemke v. Farmers' Grain Co., 1922, 258 U.S. 50, 42 S.Ct. 244, 66 L.Ed. 458. See also Kansas City Southern R. Co. v. Kaw Valley Drainage Dist., 1914, 233 U.S. 75, 34 S.Ct. 564, 58 L.Ed. 857; Illinois Cent. R. Co. v. Illinois, 1896, 163 U.S. 142, 16 S.Ct. 1096, 41 L.Ed. 107; McDermott v. Wisconsin, 1913, 228 U. S. 115, 33 S.Ct. 431, 57 L.Ed. 754, 47 L.R.A.,N.S., 984, Ann.Cas.1915A, 39; Brennan v. Titusville, 1894, 153 U.S. 289, 299, 14 S.Ct. 829, 38 L.Ed. 719; Hannibal & St. J. R. Co. v. Husen, 1878, 95 U.S. 465, 472, 24 L.Ed. 527; Dahnke-Walker Milling Co. v. Bondurant, 1921, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239.
[27] Robbins v. Shelby County Taxing Dist., 1887, 120 U.S. 489, 493, 7 S.Ct. 592, 30 L.Ed. 694. See also Southern R. Co. v. Reid, 1912, 222 U.S. 424, 32 S.Ct. 140, 56 L.Ed. 257; Western Union Tel. Co. v. James, 1896, 162 U.S. 650, 655, 16 S.Ct. 934, 40 L.Ed. 1105; United States v. E. C. Knight Co., 1895, 156 U.S. 1, 11, 15 S.Ct. 249, 39 L.Ed. 325; Pittsburg & Southern Coal Co. v. Bates, 1895, 156 U.S. 577, 588, 15 S.Ct. 415, 39 L.Ed. 538; Wilkerson v. Rahrer (In re Rahrer), 1891, 140 U.S. 545, 555, 11 S.Ct. 865, 35 L.Ed. 572; Leisy v. Hardin, 1890, 135 U.S. 100, 110, 10 S.Ct. 681, 34 L.Ed. 128; Philadelphia & S. Mail S. S. Co. v. Pennsylvania, 1887, 122 U.S. 326, 336, 7 S.Ct. 1118, 30 L.Ed. 1200; Walling v. Michigan, 1886, 116 U.S. 446, 455, 6 S.Ct. 454, 29 L.Ed. 691; Escanaba & L. M. Transp. Co. v. Chicago, 1883, 107 U.S. 678, 2 S.Ct. 185, 27 L.Ed. 442; Welton v. Missouri, 1876, 91 U.S. 275, 282, 23 L.Ed. 347; Brennan v. Titusville, 1894, 153 U.S. 289, 302, 14 S.Ct. 829, 38 L.Ed. 719; United States v. Rio Grande Dam & Irrig. Co., 1899, 174 U.S. 690, 19 S.Ct. 770, 43 L.Ed. 1136; Kelly v. Washington ex rel. Foss Co., 1937, 302 U.S. 1, 58 S.Ct. 87, 82 L.Ed. 3.
[28] Escanaba & L. M. Transp. Co. v. Chicago, 1883, 107 U.S. 678, 687, 2 S. Ct. 185, 27 L.Ed. 442. See also Cardwell v. American River Bridge Co., 1885, 113 U.S. 205, 210, 5 S.Ct. 423, 28 L.Ed. 959; Simpson v. Shepard (Minnesota Rate Cases), 1913, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A.,N.S., 1151, Ann.Cas.1916A, 18.
[29] Lake Shore & M. S. R. Co. v. Ohio, 1899, 173 U.S. 285, 297, 19 S.Ct. 465, 43 L.Ed. 702. See also Gulf, C. & S. F. R. Co. v. Hefley, 1895, 158 U.S. 98, 104, 15 S.Ct. 802, 39 L.Ed. 910; Missouri, K. & T. R. Co. v. Harris, 1914, 234 U.S. 412, 34 S.Ct. 790, 58 L.Ed. 1377, L.R.A. 1915E, 942; Erie R. Co. v. New York, 1914, 233 U.S. 671, 34 S.Ct. 756, 58 L.Ed. 1149, 52 L.R.A.,N.S., 266; Asbell v. Kansas, 1908, 209 U.S. 251, 28 S.Ct. 485, 52 L. Ed. 778, 14 Ann.Cas. 1101; Smith v. Alabama, 1888, 124 U.S. 465, 473, 8 S. Ct. 564, 31 L.Ed. 508; Smith v. Turner Passenger cases, 1849, 7 How. 283, 396, 12 L.Ed. 702; Savage v. Jones, 1912, 225 U.S. 501, 32 S.Ct. 715, 56 L.Ed. 1182; Chicago, R. I. & P. R. Co. v. Hardwick, 1913, 226 U.S. 426, 33 S.Ct. 174, 57 L.Ed. 284, 46 L.R.A.,N.S., 203; Missouri Pac. R. Co. v. Porter, 1927, 273 U. S. 341, 47 S.Ct. 383, 71 L.Ed. 672.
[30] Missouri Pac. R. Co. v. Larabee Flour Mills, 1909, 211 U.S. 612, 29 S.Ct. 214, 53 L.Ed. 352.
[31] Thurlow v. Massachusetts (License Cases), 1847, 5 How. 504, 574, 12 L.Ed. 256. See also McDermott v. Wisconsin, 1913, 228 U.S. 115, 33 S.Ct. 431, 57 L. Ed. 754, 47 L.R.A.,N.S., 984, Ann.Cas. 1915A, 39; Missouri, K. & T. R. Co. v. Harris, 1914, 234 U.S. 412, 34 S.Ct. 790, 58 L.Ed. 1377, L.R.A.1915E. 942; Southern R. Co. v. Reid, 1912, 222 U.S. 424, 32 S.Ct. 140, 56 L.Ed. 257; Chicago, I. & L. R. Co. v. Hackett, 1913, 228 U.S. 559, 33 S.Ct. 581, 57 L.Ed. 966; Railroad Commission v. Southern P. Co., 1924, 264 U.S. 331, 44 S.Ct. 376, 68 L.Ed. 713; Kelly v. Washington ex rel. Foss Co., 1937, 302 U.S. 1, 58 S.Ct. 87, 82 L.Ed. 3.
[32] Whish v. Public Service Commission, 1925, 240 N.Y. 677, 148 N.E. 755. See also Missouri, K. & T. R. Co. v. Haber, 1898, 169 U.S. 613, 627, 18 S.Ct. 488, 42 L.Ed. 878; Michigan C. R. Co. v. Vreeland, 1913, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417, Ann.Cas.1914C, 176.
[33] Northern Pac. R. Co. v. Washington ex rel. Atkinson, 1912, 222 U.S. 370, 32 S.Ct. 160, 56 L.Ed. 237.
[34] Lord v. Goodall, N. & P. S. S. Co., 1881, 102 U.S. 541, 543, 26 L.Ed. 224. See also Thurlow v. Massachusetts (License Cases), 1847, 5 How. 504, 574, 12 L.Ed. 256; Smith v. Turner (Passenger cases), 1849, 7 How. 283, 415, 12 L. Ed. 702; Sinnot v. Davenport, 1849, 22 How. 227, 243, 16 L.Ed. 243; Hall v. De Cuir, 1878, 95 U.S. 485, 488, 24 L.Ed. 547; Addyston Pipe & Steel Co. v. United States, 1899, 175 U.S. 211, 247, 20 S. Ct. 96, 44 L.Ed. 136; Simpson v. Shepard (Minnesota Rate Cases), 1913, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A.,N.S., 1151, Ann.Cas.1916A, 18; Houston, E. & W. T. R. Co. v. United States, 1914, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341.
[35] Foster v. Master and Wardens of Port of New Orleans, 1877, 94 U.S. 246, 24 L.Ed. 122. See also Red "C" Oil Mfg. Co. v. Board of Agriculture, 1912, 222 U.S. 380, 32 S.Ct. 152, 56 L.Ed. 240; New Mexico ex rel. McLean v. Denver & R. G. R. Co., 1906, 203 U.S. 38, 27 S.Ct. 1, 51 L.Ed. 78; Arbuckle v. Blackburn, 1903, 191 U.S. 405, 414, 24 S.Ct. 148, 48 L.Ed. 239; Pittsburgh & S. Coal Co. v. Louisiana, 1895, 156 U.S. 590, 597, 15 S.Ct. 459, 39 L.Ed. 544; Savage v. Jones, 1912, 225 U.S. 501, 32 S.Ct. 715, 56 L.Ed. 1182; Vance v. Vandercook Co., 1898, 170 U.S. 438, 455, 18 S.Ct. 674, 42 L.Ed. 1100; Turner v. Maryland, 1883, 107 U.S. 38, 2 S.Ct. 44, 27 L.Ed. 370; Standard Stock Food Co. v. Wright, 1912, 225 U.S. 540, 32 S.Ct. 784, 56 L.Ed. 1197; Hinson v. Lott, 1869, 8 Wall. 148, 19 L.Ed. 387; Scott v. Donald, 1897, 165 U.S. 58, 17 S.Ct. 265, 41 L.Ed. 632; Pabst Brewing Co. v. Crenshaw, 1905, 198 U.S. 17, 25 S.Ct. 552, 49 L.Ed. 925; Patapsco Guano Co. v. Board of Agriculture, 1898, 171 U.S. 345, 18 S.Ct. 862, 43 L.Ed. 191; Foote & Co. v. Stanley, 1914, 232 U.S. 494, 34 S.Ct. 377, 58 L.Ed. 698; Pure Oil Co. v. Minnesota, 1918, 248 U.S. 158, 39 S. Ct. 35, 63 L.Ed. 180; Standard Oil Co. v. Graves, 1919, 249 U.S. 389, 39 S.Ct. 320, 63 L.Ed. 662.
[36] Smith v. Turner (Passenger Cases), 1849, 7 How. 283, 400, 12 L.Ed. 702. See also Louisiana v. Texas, 1900, 176 U.S. 1, 21, 20 S.Ct. 251, 44 L.Ed. 347; Minnesota v. Barber, 1890, 136 U.S. 313, 319, 10 S.Ct. 862, 34 L.Ed. 455; Compagnie Francaise de Navigation v. Louisiana, 1902, 186 U.S. 380, 385, 22 S.Ct. 811, 46 L.Ed. 1209; Reid v. Colorado, 1902, 187 U.S. 137, 151, 23 S.Ct. 92, 47 L.Ed. 108; Asbell v. Kansas, 1908, 209 U.S. 251, 28 S.Ct. 485, 52 L.Ed. 778, 14 Ann.Cas. 1101; Hannibal & St. J. R. Co. v. Husen, 1878, 95 U.S. 465, 471, 24 L.Ed. 527; Kimmish v. Ball, 1889, 129 U.S. 217, 220, 9 S.Ct. 277, 32 L.Ed. 695; Rasmussen v. Idaho, 1901, 181 U. S. 198, 21 S.Ct. 594, 45 L.Ed. 820; Smith v. St. Louis & S. W. R. Co., 1901, 181 U.S. 248, 21 S.Ct. 603, 45 L.Ed. 847; Missouri, K. & T. R. Co. v. Haber, 1898, 169 U.S. 613, 636, 18 S.Ct. 488, 42 L.Ed. 878; Morgan's L. & T. R. & S. S. Co. v. Board of Health, 1886, 118 U.S. 455, 465, 6 S.Ct. 1114, 30 L.Ed. 237; Mintz v. Baldwin, 1933, 289 U.S. 346, 53 S.Ct. 611, 77 L.Ed. 1245.
[37] Leisy (Gus) & Co. v. Hardin, 1890, 135 U.S. 100, 108, 10 S.Ct. 681, 34 L. Ed. 128; see also Simpson v. Shepard (Minnesota Rate Cases), 1913, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R. A.,N.S., 1151, Ann.Cas.1916A, 18; Southern R. Co. v. Reid, 1912, 222 U.S. 424, 32 S.Ct. 140, 56 L.Ed. 257; Escanaba & L. M. Transp. Co. v. Chicago, 1883, 107 U.S. 678, 683, 2 S.Ct. 185, 27 L.Ed. 442; Mobile County v. Kimball, 1881, 102 U.S. 691, 698, 26 L.Ed. 238; Gilman v. Philadelphia, 1866, 3 Wall. 713, 727, 18 L.Ed. 96; Cardwell v. American River Bridge Co., 1885, 113 U.S. 205, 210, 5 S.Ct. 423, 28 L.Ed. 959; Stone v. Farmers Loan & T. Co. (Railroad Commission Cases), 1886, 116 U.S. 307, 6 S.Ct. 334, 388, 1191, 29 L.Ed. 636; Peik v. Chicago & N. W. R. Co., 1877, 94 U.S. 164, 24 L.Ed. 97; Smith v. Turner (Passenger Cases), 1849, 7 How. 283, 12 L.Ed. 702; Covington & C. Bridge Co. v. Kentucky, 1894, 154 U.S. 204, 209, 14 S.Ct. 1087, 38 L.Ed. 962; Western Union Tel. Co. v. Kansas ex rel. Coleman, 1910, 216 U.S. 1, 30 S.Ct. 190, 54 L.Ed. 355; Cummings v. Chicago, 1903, 188 U.S. 410, 23 S.Ct. 472, 47 L.Ed. 525; New York ex rel. Pennsylvania R. Co. v. Knight, 1904, 192 U.S. 21, 27, 24 S.Ct. 202, 48 L.Ed. 325; Valley S. S. Co. v. Wattawa, 1917, 244 U.S. 202, 37 S.Ct. 523, 61 L.Ed. 1084; Interstate Transit v. Lindsey, 1931, 283 U.S. 183, 51 S.Ct. 380, 75 L.Ed. 953.
[38] Missouri, K. & T. R. Co. v. Haber, 1898, 169 U.S. 613, 628, 18 S.Ct. 488, 42 L.Ed. 878. See also Sioux Remedy Co. v. Cope, 1914, 235 U.S. 197, 35 S.Ct. 57, 59 L.Ed. 193; New Mexico ex rel. McLean & Co. v. Denver & R. G. R. Co., 1906, 203 U.S. 38, 27 S.Ct. 1, 51 L.Ed. 78; Houston & T. C. R. Co. v. Mayes, 1906, 201 U.S. 321, 26 S.Ct. 491, 50 L. Ed. 772; Bowman v. Chicago & N. W. R. Co., 1888, 125 U.S. 465, 489, 8 S. Ct. 689, 31 L.Ed. 700; Robbins v. Taxing Dist., Shelby County, 1887, 120 U. S. 489, 493, 7 S.Ct. 592, 30 L.Ed. 694; Gloucester Ferry Co. v. Pennsylvania, 1885, 114 U.S. 196, 215, 5 S.Ct. 826, 29 L.Ed. 158; Hannibal & St. J. R. Co. v. Husen, 1878, 95 U.S. 465, 470, 24 L. Ed. 527; Lake Shore & M. S. R. Co. v. Ohio ex rel. Lawrence, 1899, 173 U.S. 285, 292, 19 S.Ct. 465, 43 L.Ed. 702; New York, N. H. & H. R. Co. v. New York, 1897, 165 U.S. 628, 631, 17 S.Ct. 418, 41 L.Ed. 853; Sligh v. Kirkwood, 1915, 237 U.S. 52, 35 S.Ct. 501, 59 L.Ed. 835; Western Union Tel. Co. v. Kansas ex rel. Coleman, 1910, 216 U.S. 1, 26, 30 S. Ct. 190, 54 L.Ed. 355.
[39] Northern Securities Co. v. United States, 1904, 193 U.S. 197, 350, 24 S. Ct. 436, 48 L.Ed. 679; Cf. Western Distributing Co. v. Public Service Commission, 1932, 285 U.S. 119, 52 S.Ct. 283, 76 L.Ed. 655.
[40] New York, N. H. & H. R. Co. v. New York, 1897, 165 U.S. 628, 631, 17 S.Ct. 418, 41 L.Ed. 853. See also Henderson v. New York, 1876, 92 U.S. 259, 23 L.Ed. 543; Chy Lung v. Freeman, 1876, 92 U.S. 275, 23 L.Ed. 550; New York v. Compagnie Generale Transatlantique, 1883, 107 U.S. 59, 2 S.Ct. 87, 27 L.Ed. 383; Illinois Cent. R. Co. v. Illinois ex rel. Butler, 1896, 163 U.S. 142, 16 S.Ct. 1096, 41 L.Ed. 107; McDermott v. Wisconsin, 1913, 228 U.S. 115, 33 S. Ct. 431, 57 L.Ed. 754, 47 L.R.A.,N.S., 984, Ann.Cas.1915A, 39; Savage v. Jones, 1912, 225 U.S. 501, 32 S.Ct. 715, 56 L.Ed. 1182; Brennan v. Titusville, 1894, 153 U.S. 289, 299, 14 S.Ct. 829, 38 L.Ed. 719; Schollenberger v. Pennsylvania, 1898, 171 U.S. 1, 12, 18 S.Ct. 757, 43 L.Ed. 49; Seaboard Air Line R. Co. v. Blackwell, 1917, 244 U.S. 310, 37 S.Ct. 640, 61 L.Ed. 1160, L.R.A. 1917F, 1184; Lemke v. Farmers Grain Co., 1922, 258 U.S. 50, 42 S.Ct. 244, 66 L.Ed. 458; Clyde Mallory Lines v. Alabama, 1935, 296 U.S. 261, 56 S.Ct. 194, 80 L.Ed. 215; DiSanto v. Pennsylvania, 1927, 273 U.S. 34, 47 S.Ct. 267, 71 L.Ed. 524; Missouri P. R. Co. v. Castle, 1912, 224 U.S. 541, 32 S.Ct. 606, 56 L.Ed. 875.
[41] Pennsylvania R. Co. v. Hughes, 1903, 191 U.S. 477, 488, 24 S.Ct. 132, 48 L. Ed. 268. See also South Covington & C. St. R. Co. v. Covington, 1915, 235 U.S. 537, 35 S.Ct. 158, 59 L.Ed. 350, L. R.A.1915F, 792; Asbell v. Kansas, 1908, 209 U.S. 251, 28 S.Ct. 485, 52 L.Ed. 778, 14 Ann.Cas. 1101; Sherlock v. Alling, 1876, 93 U.S. 99, 103, 23 L.Ed. 819; Louisville & N. R. Co. v. Kentucky, 1902, 183 U.S. 503, 518, 22 S.Ct. 95, 46 L.Ed. 298; Standard Oil Co. v. Tennessee ex rel. Cates, 1910, 217 U.S. 413, 30 S.Ct. 543, 54 L.Ed. 817.
[42] Gulf, C. & S. F. R. Co. v. Hefley, 1895, 158 U.S. 98, 104, 15 S.Ct. 802, 39 L.Ed. 910. See also Chicago R. I. & R. R. Co. v. Hardwick Farmers Elevator Co., 1913, 226 U.S. 426, 33 S.Ct. 174, 57 L.Ed. 284, 46 L.R.A.,N.S., 203; Missouri, K. & T. R. Co. v. Haber, 1898, 169 U.S. 613, 627, 18 S.Ct. 488, 42 L. Ed. 878; Michigan C. R. Co. v. Vreeland, 1913, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417; Illinois C. R. Co. v. DeFuentes, 1915, 236 U.S. 157, 35 S.Ct. 275, 59 L.Ed. 517; Railroad Commission (California) v. Southern P. R. Co., 1924, 264 U.S. 331, 44 S.Ct. 376, 68 L.Ed. 713.
[43] Worcester County Trust Co. v. Riley, 1937, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268, citing Louisiana ex rel. Elliott v. Jumel, 1883, 107 U.S. 711, 2 S.Ct. 128, 27 L.Ed. 448; Hagood v. Southern, 1886, 117 U.S. 52, 6 S.Ct. 608, 29 L.Ed. 805; In re Ayers, 1887, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216; North Carolina v. Temple, 1890, 134 U.S. 22, 30, 10 S.Ct. 509, 33 L.Ed. 849; Smith v. Reeves, 1900, 178 U.S. 436, 20 S.Ct. 919, 44 L. Ed. 1140; Lankford v. Platte Iron Works, 1915, 235 U.S. 461, 35 S.Ct. 173, 59 L.Ed. 316; Ex parte State of New York, No. 1, 1921, 256 U.S. 490, 500, 41 S.Ct. 588, 65 L.Ed. 1057; Missouri v. Fiske, 1933, 290 U.S. 18, 28, 54 S.Ct. 18, 78 L.Ed. 145; Cunningham v. Macon & Brunswick R. Co., 1883, 109 U.S. 446, 3 S.Ct. 292, 609, 27 L.Ed. 992; Wells v. Roper, 1918, 246 U.S. 335, 38 S.Ct. 317, 62 L.Ed. 755.
[44] Worcester County Trust Co. v. Riley, 1937, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268, citing Ex parte Young, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764; Scully v. Bird, 1908, 209 U.S. 481, 28 S.Ct. 597, 52 L.Ed. 899; Old Colony Trust Co. v. Seattle, 1926, 271 U.S. 426, 46 S.Ct. 552, 70 L.Ed. 1019; Louisiana ex rel. Elliott v. Jumel, 1883, 107 U.S. 711, 2 S.Ct. 128, 27 L.Ed. 448; Hagood v. Southern, 1886, 117 U.S. 52, 6 S.Ct. 608, 29 L.Ed. 805; In re Ayers, 1887, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216; Lankford v. Platte Iron Works, 1915, 235 U.S. 461, 35 S.Ct. 173, 59 L.Ed. 316.
[45] Re Tyler, 1893, 149 U.S. 164, 190, 13 S.Ct. 785, 37 L.Ed. 689, followed in Scott v. Donald, 1897, 165 U.S. 58, 67, 17 S.Ct. 265, 41 L.Ed. 632; Id., 165 U.S. 107, 17 S.Ct. 262, 41 L.Ed. 648.
[46] Pennoyer v. McConnaughy, 1891, 140 U.S. 1, 11 S.Ct. 699, 35 L.Ed. 363. In reaching this conclusion the court cited Osborn v. Bank of United States, 1824, 9 Wheat. 738, 6 L.Ed. 204; Davis v. Gray, 1873, 16 Wall. 203, 21 L.Ed. 447 (suit to restrain sale of railroad land grants, declared forfeited by State law); Tomlinson v. Branch, 1873, 15 Wall. 460, 21 L.Ed. 189; Litchfield v. Webster County, 1879, 101 U.S. 773, 25 L.Ed. 925; Board of Liquidation v. McComb, 1876, 92 U.S. 531, 23 L.Ed. 623 (restraint of State commission from issuing, in liquidation of State debt to a certain Levee Co., of certain of the same kind of bonds as held by petitioner); Allen v. Baltimore & O. R. Co., 1885, 144 U.S. 311, 5 S.Ct. 925, 29 L.Ed. 200 (similar to McComb case); Poindexter v. Greenhow, 1885, 114 U.S. 270, 5 S.Ct. 903, 29 L.Ed. 185, detinue against a tax collector who, under color of State law, held unconstitutional, refused tender of tax-receivable coupons and distrained on certain property of petitioner.
[47] Greene v. Louisville & I. R. Co., 1917, 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, Ann.Cas.1917E, 88, followed in Louisville & N. R. Co. v. Greene, 1917, 244 U.S. 522, 37 S.Ct. 683, 61 L.Ed. 1291, Ann.Cas.1917E, 97; Illinois C. R. Co. v. Greene, 1917, 244 U.S. 555, 37 S.Ct. 697, 61 L.Ed. 1309. See also Tanner v. Little, 1916, 240 U.S. 369, 36 S.Ct. 379, 60 L.Ed. 691; Harrison v. St. Louis & S. F. R. Co., 1914, 232 U. S. 318, 34 S.Ct. 333, 58 L.Ed. 621, L.R.A. 1915F, 1187; Herndon v. Chicago, R. I. & P. R. Co., 1910, 218 U.S. 135, 30 S. Ct. 633, 54 L.Ed. 970; Ludwig v. Western Union, 1910, 216 U.S. 146, 30 S.Ct. 280, 54 L.Ed. 423; Hunter v. Wood, 1908, 209 U.S. 205, 28 S.Ct. 472, 52 L.Ed. 747; Philadelphia Co. v. Stimson, 1912, 223 U.S. 605, 621, 32 S.Ct. 340, 56 L.Ed. 570; Truax v. Raich, 1915, 239 U.S. 33, 37, 36 S.Ct. 7, 60 L.Ed. 131, L.R. A.1916D, 545, Ann.Cas.1917B, 283; Worcester County Trust Co. v. Riley, 1937, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268