# ATLANTIC REFINING CO. *v.* VIRGINIA.

No. 1.   Argued October 21, 22, 1936.   Reargued October 11, 1937.— Decided November 8, 1937.

*Mr. T. Justin Moore,* with whom *Mr. Lewis F. Powell, Jr.,* was on the brief, for appellant.

*Mr. Abram P. Staples,* Attorney General of Virginia, with whom *Mr. W. W. Martin* was on the brief, for appellee.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Atlantic Refining Company is a Pennsylvania corporation engaged in refining and selling gasoline and petroleum which it markets throughout the United States and in foreign countries. In 1929 the year's sales aggregated more than $153,000,000. Prior to 1930 the company had never applied for permission to do business in Virginia. It had not done any intrastate business there; and had no property or place of business within the State. It had done some interstate business, but had not paid, or been requested by the State to pay, either an entrance fee or taxes. In January 1930 the company applied to the State Corporation Commission for a certificate of authority to do intrastate business. Its net assets were then $132,196,275; its authorized capital $100,-000,000; its issued capital $67,049,500. The Commission granted the certificate; but, as prescribed by Chapter 53, § 38a of the Acts of Assembly of Virginia, 1910; Tax Code of Virginia (Michie, 1930) § 207, set forth in the margin,[1] exacted for the privilege $5,000 as an entrance

---

[1] "Section 207. Every foreign corporation, when it obtains from the State corporation commission a certificate of authority to do

fee. Payment was made under protest. Having duly claimed that by requiring it the statute violated the Federal Constitution, the company requested refund of the amount paid. The Commission refused to make the refund; the highest court of the State affirmed its order, 165 Va. 492; 183 S. E. 243, and the case is here on the company's appeal.

---

business in this State, shall pay an entrance fee into the treasury of Virginia to be ascertained and fixed as follows:

For a company whose maximum capital stock is fifty thousand dollars, or less, thirty dollars;

For a company whose capital stock is over fifty thousand dollars, and not to exceed one million dollars, sixty cents for each thousand dollars or fraction thereof;

Over one million dollars, and not to exceed ten million dollars, one thousand dollars;

Over ten million dollars, and not to exceed twenty million dollars, one thousand two hundred and fifty dollars;

Over twenty million dollars, and not to exceed thirty million dollars, one thousand five hundred dollars;

Over thirty million dollars, and not to exceed forty million dollars, one thousand seven hundred and fifty dollars;

Over forty million dollars, and not to exceed fifty million dollars, two thousand dollars;

Over fifty million dollars, and not to exceed sixty million dollars, two thousand two hundred and fifty dollars;

Over sixty million dollars, and not to exceed seventy million dollars, two thousand five hundred dollars;

Over seventy million dollars, and not to exceed eighty million dollars, two thousand seven hundred and fifty dollars;

Over eighty million dollars, and not to exceed ninety million dollars, three thousand dollars;

Over ninety million dollars, five thousand dollars.

But foreign corporations without capital stock shall pay fifty dollars for such certificate of authority to do business within the State.

For the purpose of this section the amount to which the company is authorized by the terms of its charter to increase its capital stock shall be considered its maximum capital stock."

Answering the company's statement under Rule 12, the Commonwealth opposed our taking jurisdiction. Its objection was that the appeal presented no substantial federal question, since, in 1918, the validity of the statute was challenged under similar circumstances and sustained by a unanimous Court in *General Railway Signal Co.* v. *Virginia,* 246 U. S. 500; and, in 1928, was again sustained, by a Per Curiam opinion, in *Western Gas Construction Co.* v. *Virginia,* 276 U. S. 597. The company asks us to overrule these decisions, contending that they are inconsistent with other and later cases. It asserts that in sustaining the Virginia statute this Court followed views expressed in *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 87; and that the doctrine of the *Baltic* case has since been repudiated, in *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203, 218 and *Cudahy Packing Co.* v. *Hinkle,* 278 U. S. 460, 466. Consideration of the jurisdiction of this Court was postponed to the hearing on the merits.

By the statute foreign corporations are divided, for the purpose of fixing the amount of the entrance fee, into twelve classes. The fee for the lowest class—those whose authorized capital stock is $50,000 or less—is $30. The fee for the highest class—those whose authorized capital stock exceeds $90,000,000—is $5,000. The company does not object to the subject or the occasion of the exaction. Its objection is solely to the measure. Its claim is that the statute imposes an unconstitutional condition because it determines the amount of the fee by the amount of the company's authorized capital. The contention is that a fee so determined necessarily burdens interstate commerce, denies due process, and denies equal protection of the laws.

Unlike the cases in which the doctrine of unconstitutional conditions has been applied, the condition here

questioned does not govern the corporation's conduct after admission. But it may be assumed that the rule declared in *Terral* v. *Burke Construction Co.*, 257 U. S. 529, is applicable also to conditions to be performed wholly before admission; and that the $5,000 must be refunded if its exaction involved denial of any constitutional right. For we are of opinion that in refusing to grant the authority to carry on local business except upon payment of the $5,000 no constitutional right of the company was violated.

*First.* Virginia recognized the constitutional right of the company to carry on interstate business without paying an entrance fee. On the other hand, the company conceded that the Federal Constitution does not confer upon it the right to engage in intrastate commerce in Virginia unless it has secured the consent of the State. Compare *Hemphill* v. *Orloff*, 277 U. S. 537, 548. Whether the privilege shall be granted to a foreign corporation is a matter of state policy. Virginia might refuse to grant the privilege for any business, or might grant the privilege for some kinds of business and deny it to others.[2] It might grant the privilege to all corporations with small capital while denying the privilege to those whose capital or resources are large. It might grant the privilege without exacting compensation; or it could insist upon a substantial payment as a means of raising revenue.

As the entrance fee is not a tax, but compensation for a privilege applied for and granted, no reason appears why the State is not as free to charge $5,000 for the privilege as it would be to charge that amount for a

---

[2] Virginia does, in fact, refuse to foreign corporations the privilege of doing any intrastate public service business. Virginia Const. (1902) § 163. This prohibition was sustained in *Railway Express Agency, Inc.* v. *Virginia*, 282 U. S. 440, as applied to a foreign corporation wishing to carry on within the state an extensive interstate and local express business.

franchise granted to a local utility, or for a parcel of land which it owned. If Virginia had the power to charge $5,000 for the privilege, the particular measure applied by the Legislature in arriving at that sum would seem to be legally immaterial; and the company is in a position like that of the taxpayer in *Castillo* v. *McConnico,* 168 U. S. 674, 680, of whom it was said: "His right is limited solely to the inquiry whether in the case which he presents the effect of applying the statute is to deprive him of his property without due process of law." The validity even of a tax "can in no way be dependent upon the mode which the State may deem fit to adopt." *Home Insurance Co.* v. *New York,* 134 U. S. 594, 600. "The selected measure may appear to be simply a matter of convenience in computation . . . and if the tax purports to be laid upon a subject within the taxing power of the State, it is not to be condemned by the application of any artificial rule . . ." *Kansas City, F. S. & M. Ry. Co.* v. *Botkin,* 240 U. S. 227, 233. Compare *Rae Consolidated Copper Co.* v. *United States,* 268 U. S. 373, 376; *New York* v. *Latrobe,* 279 U. S. 421, 427.

*Second.* Even if the Federal Constitution conferred upon every foreign corporation the right to enter any State and carry on there a local business upon paying a reasonable fee, there is nothing in the record to show that the $5,000 charged is more than reasonable compensation for the privilege granted. The payment required is a single, non-recurrent charge—a payment in advance for a privilege extending into the long future. No matter how large the company's local business may be, no matter how much, or how often, its issued capital may be increased, no additional entrance fee is payable. The value of such a privilege cannot be gauged by the sales expected in the year 1930.[3] They may increase

---

[3] Prior to 1930 two subsidiaries of the company did a local business in Virginia; and the company planned to take over all their

rapidly from year to year. The corporation with $132,-196,275 assets in 1930 may have more than double the amount a decade later. Nor is it unreasonable to base the fee upon the amount of the capital authorized at the time of the application, instead of charging a fee based upon the amount of the capital then issued, or upon the amount of assets then owned, and exacting later additional fees if, and when, more capital stock is issued or more assets are acquired. By fixing the fee in accordance with the capital authorized at the time of the application for admission, the State relieves itself of the necessity of keeping watch of changes in the future in these respects.

*Third.* It is contended that a fee measured solely by the amount of the corporation's authorized capital stock necessarily burdens interstate commerce. In support of that contention it is said that the authorized capital stock represents property located in forty-seven States and several foreign countries used in both interstate and foreign commerce. But this is not true. Authorized capital has no necessary relation to the property actually owned or used by the corporation; furthermore, the fee for which it is the measure represents simply the privilege of doing a local business. Because the entrance fee does not represent either property or business being done, it is immaterial that in fixing its amount no apportionment is made between the property owned or the business done within the State and that owned or done elsewhere.

The entrance fee is obviously not a charge laid upon interstate commerce; nor a charge furtively directed against interstate commerce; nor a charge measured by such commerce. Its amount does not grow or shrink according to the volume of interstate commerce or the

property and business within the State. The aggregate of the sales of the company in interstate commerce in Virginia in 1929 and of sales by the subsidiaries in intrastate commerce amounted to $1,396,600. About two-thirds of this business was intrastate.

amount of the capital used in it. The size of the fee would be exactly the same if the company did no interstate commerce in Virginia or elsewhere. The entrance fee is comparable to the charter, or incorporation, fee of a domestic corporation—a fee commonly measured by the amount of the capital authorized.[4] It has never been doubted that such a charge to a domestic corporation whatever the amount is valid, although the company proposes to engage in interstate commerce and to acquire property also in other States. No reason is suggested why a different rule should be applied to the entrance fee charged this foreign corporation.

*Fourth.* It is contended that a statute which measures the entrance fee solely by the authorized capital deprives the corporation of its property without due process, be-

---

[4] Forty-three states as well as the District of Columbia, Alaska, Hawaii, the Philippine Islands and Puerto Rico impose a domestic incorporation fee measured by the authorized amount of capital or number of shares. Alabama Code (1928) § 6969; Arkansas Stat. (Pope, 1937) § 2213; California Pol. Code (1933) § 409, as amended L. 1935, c. 295; Colorado Stat. Ann. (1935) c. 41, § 70; Connecticut Gen. Stat. (1930) § 3478; Delaware Rev. Code (1935) §§ 95, 2104; Florida Comp. Gen. Laws (1927) § 6582; Idaho Code (1932) § 65–809; Indiana Stat. Ann. (Burns, 1933) § 25–602; Iowa Code (1935) § 8349; Kansas Gen. Stat. (1935) § 17–221; Kentucky Stat. (1936) § 4225; Louisiana Gen. Stat. (1932) § 1147; Maine Rev. Stat. (1930) c. 56, § 10, as amended L. 1931, c. 240; Maryland Code (Supp. 1935) art. 81, § 133; Massachusetts Gen. Laws (1932) c. 156, § 53; Michigan Comp. Laws (1929) § 10138; Minnesota Stat. (Mason, Supp. 1936) § 7475; Mississippi Code (1930) § 4137; Missouri Const. art. X, § 21, Rev. Stat. (1929) § 4539; Montana Rev. Code (1935) § 145, as amended L. 1935, c. 50; Nebraska Comp. Stat. (1929) § 33–103; Nevada Comp. Laws (1929) § 1676, as amended L. 1931, c. 224, § 10; New Hampshire Pub. Laws (1926) c. 225, § 91; New Jersey Comp. Stat. (Supp. 1925–1930) § 47–114; New Mexico Stat. (1929) § 32–223; New York Tax Law (McKinney, 1936) § 180, as amended L. 1937, c. 359, § 7; North Carolina Code (1935) § 1218, as amended L. 1937, c. 171; North Dakota Comp. Laws (1913) § 4509; Ohio

30

cause the amount is determined by reference to property beyond the taxing jurisdiction; and also that this charge is an arbitrary taking of property. As has been shown, the amount of the entrance fee is not measured by property, either within or without the jurisdiction; and it is not a tax upon property. It is payment for an opportunity granted. Nor is it a charge arbitrary in amount. The value of the privilege acquired is obviously dependent upon the financial resources of the corporation—not only upon the capital possessed at the time of its admission to do business, but also upon the capital which it will be in a position to secure later through its existing author-

Code (1936) § 176; Oklahoma Stat. (1931) § 3749; Oregon Code (1930) § 25–206; Pennsylvania Stat. Ann. (Purdon, 1929) tit. 72, § 1822; Rhode Island Gen. Laws (1923) c. 248, § 85, as amended L. 1925, c. 651, § 3; South Carolina Code (1932) § 7738; South Dakota Comp. Laws (1929) § 5334, as amended L. 1931, c. 225; Tennessee Code (Williams, 1934) § 1248.106; Texas Rev. Civ. Stat. (1925) art. 3914, as amended L. 1931, c. 120, § 1; Vermont Pub. Laws (1933) § 920; Virginia Tax Code (Michie, 1936) § 206; Washington Rev. Stat. (Remington, 1932) § 3836–1, as amended L. 1937, c. 70, § 1; Wisconsin Stat. (1935) § 180.02; Wyoming Rev. Stat. (1931) § 28–102; District of Columbia Code (1929) tit. 10, § 14; Alaska Comp. Laws (1933) § 1012; Hawaii Rev. Laws (1935) § 6753; Philippine Islands L. 1906, act 1459, § 8, as amended L. 1912, act 2135, § 1, L. 1915, act 2452, L. 1918, act 2728, § 3, L. 1928, act 3518, § 5; Puerto Rico L. 1911, act 30, § 63a, as amended L. 1912, act 25.

In Utah the incorporation fee is measured by that proportion of the corporation's stock "represented or to be represented by its property owned and business done" in the state. Utah Rev. Stat. (1933) § 28–1–2. In Illinois an "initial license fee" is payable at the time the corporation files its first report of issuance of shares, and is measured by the value of the entire consideration received for its shares so issued. Illinois Rev. Stat. (B. A. Ed. 1937) c. 32, §§ 157.128–157.130. In Arizona, Georgia and West Virginia there is no charter or incorporation fee other than small fixed charges for such services as issuing and filing the certificate of incorporation. Arizona Rev. Code (1928) § 1459; Georgia Code (1933) § 22–307; West Virginia Code (1937) § 5819.

ity to issue additional stock. Obviously, the power inherent in the possession of large financial resources is not dependent upon, or confined to, the place where the assets are located. Compare *Great Atlantic & Pacific Tea Co.* v. *Grosjean,* 301 U. S. 412. Great power may be exerted by the company in Virginia although it has little property located there. And the value to it of the privilege to exert that power is not necessarily measured by the amount of the property located, or by the amount of the local business done, in Virginia. Moreover, it is immaterial whether the opportunity is availed of or not. The State grants a large privilege. It may demand a corresponding price.

*Fifth.* It is contended that the statute by measuring the entrance fee solely by the authorized capital is void because it operates arbitrarily and unequally between the appellant and other foreign corporations seeking the same privilege within the State. The contention is unfounded. Even if a corporation which has not yet been admitted to do business were in a position to complain that the State denies it equal protection, there is here no basis for a claim of discrimination. Every foreign corporation with an authorized capital exceeding ninety million dollars which seeks admission to do an intrastate business is, and has been since 1910, required to pay the same entrance fee. Nor is there any discrimination between foreign corporations and domestic of which the company may complain. While the charter fees of domestic corporations are smaller than the entrance fees of foreign corporations, Virginia levies upon foreign corporations, after admission, less in taxes than it does upon domestic corporations. A domestic corporation with an authorized capital of $100,000,000 is required to pay a charter fee of only $600; but it must pay each year a franchise tax of $8,850. A foreign corporation of that authorized capital is required to pay an entrance fee of $5,000, but pays no franchise tax whatever.

The difference in the powers of a State over entrance fees and taxes was pointed out in *Hanover Fire Ins. Co. v. Harding*, 272 U. S. 494, 510–511: "In subjecting a law of the State which imposes a charge upon foreign corporations to the test whether such a charge violates the equal protection clause of the Fourteenth Amendment, a line has to be drawn between the burden imposed by the State for the license or privilege to do business in the State, and the tax burden which, having secured the right to do business, the foreign corporation must share with all the corporations and other taxpayers of the State. With respect to the admission fee, so to speak, which the foreign corporation must pay, to become a *quasi* citizen of the State and entitled to equal privileges with citizens of the State, the measure of the burden is in the discretion of the State, and any inequality as between the foreign corporation and the domestic corporation in that regard does not come within the inhibition of the Fourteenth Amendment; but, after its admission, the foreign corporation stands equal, and is to be classified with domestic corporations of the same kind."

*Sixth.* The position of the company in the case at bar differs radically from that of the foreign corporation involved in *Cudahy Packing Co.* v. *Hinkle, supra*, and from those in the other decisions of this Court on which appellant relies. In each of those cases the corporation had, before the exaction held unconstitutional, entered the State with its permission to do local business and pursuant to that permission had acquired property and made other expenditures. Their property and the local business were found to be so closely associated with this interstate business done there that the exaction burdened it. The exaction, although called in some of those cases a filing fee, was in each case strictly a tax; for it was imposed after the admittance of the corporation into the

State.[5] In the case at bar the situation is different. In 1930, when the company applied for the permission to do local business, it had no property whatsoever within the State. It had never done any local business there. Its product had been marketed locally in Virginia by two other foreign corporations which had been duly admitted to do local business, and whose facilities the company had used in connection with its interstate business. The company wished to make a change. It wanted to acquire the property and business of the two corporations which were marketing its product and thereafter to carry on the local business itself. In order to do so it sought permission of the State to engage in local business. The State in no way attempted to impose an additional burden upon the company or otherwise to change the conditions under which it was operating. Virginia insisted merely that if the company wished to change the existing conditions, it should comply with the statute enacted fourteen years before the company began to do business there.

*Affirmed.*

The CHIEF JUSTICE took no part in the consideration or decision of this case.

---

[5] This is true of *Cudahy Packing Co.* v. *Hinkle*, 278 U. S. 460; *Western Union Tel. Co.* v. *Kansas*, 216 U. S. 1; *Pullman Co.* v. *Kansas*, 216 U. S. 56; *Ludwig* v. *Western Union Tel. Co.*, 216 U. S. 146; and also of *Looney* v. *Crane Co.*, 245 U. S. 178, although there the admission had been under a Texas license, and the act challenged imposed a greatly increased filing fee applicable to the extension of the license. The exactions involved in *International Paper Co.* v. *Massachusetts*, 246 U. S. 135; *Locomobile Co.* v. *Massachusetts*, 246 U. S. 146; and *Air-Way Elec. Appliance Corp.* v. *Day*, 266 U. S. 71, were annual franchise taxes applicable only after the corporation had been duly admitted. In *Cheney Bros. Co.* v. *Massachusetts*, 246 U. S. 147, and *Alpha Portland Cement Co.* v. *Massachusetts*, 268 U. S. 203, the foreign corporation was engaged exclusively in interstate business, so that the subject of the exaction was not taxable.