MONTGOMERY WARD & CO. *v.* CORPORATION & SECURITIES
COMMISSION.

1. CORPORATIONS—FOREIGN CORPORATIONS—INCREASES IN AUTHORIZED CAPITAL—STATUTES.

> Statute requiring corporations to pay a franchise fee upon organization or admission to do business within this State and upon increase in authorized capital stock and requiring domestic corporation to pay fee on entire increase of authorized capital while requiring a foreign corporation to pay only upon portion of increased authorized capital represented by portion of its tangible and intangible property, used or to be used, in intrastate business in this State does not discriminate against foreign corporations (2 Comp. Laws 1929, § 10138).

2. SAME—STATUTES—FOREIGN CORPORATIONS—INCREASE IN AUTHORIZED CAPITAL—INTRASTATE BUSINESS—FEES.

> Foreign corporation which sought admission to do an intrastate business after statute requiring a fee upon admission and upon increase in authorized capital after admission based upon portion of tangible and intangible property, used or to be used, in intrastate business became effective tacitly agreed to conform with and abide by the terms of such statute (2 Comp. Laws 1929, § 10138).

3. SAME—FOREIGN CORPORATIONS—ENTRANCE FEE.

> An entrance fee exacted by a State from a foreign corporation is compensation for a privilege applied for and granted (2 Comp. Laws 1929, § 10138).

4. SAME—FOREIGN CORPORATIONS—ENTRANCE FEE—MEASUREMENT—INTERSTATE COMMERCE.

> An entrance fee for the privilege of doing local business measured by the total authorized capital stock of a foreign corporation having property situated in other States and en-

(117)

gaged in interstate and foreign commerce is not an arbitrary taking of property beyond the jurisdiction (2 Comp. Laws 1929, § 10138).

5. SAME—AUTHORIZED CAPITAL—PROPERTY.

Authorized capital has no necessary relation to the property actually owned or used by the corporation.

6. SAME—CAPITAL STOCK—FOREIGN CORPORATIONS—ENTRANCE FEE —INTRASTATE BUSINESS—APPORTIONMENT.

Since the entrance fee for which the authorized capital of a foreign corporation is the measure represents simply the privilege of doing a local business and does not represent either property or business being done, it is immaterial that in fixing its amount no apportionment is made between the property owned or the business done within the State and that owned or done elsewhere.

7. SAME—FOREIGN CORPORATIONS—ENTRANCE FEE—AUTHORIZED CAPITAL.

The entrance fee charged a foreign corporation is comparable to the charter or incorporation fee of a domestic corporation, a fee commonly measured by the amount of the capital authorized.

8. SAME—FOREIGN CORPORATION—FEE FOR INCREASE IN AUTHORIZED CAPITAL—DUE PROCESS—EQUAL PROTECTION—INTRASTATE BUSINESS—INTERSTATE COMMERCE.

Fee charged foreign corporation upon increase of its authorized capital stock for privilege of doing local business based upon statute enacted before corporation was admitted to do business in this State and measured by portion of its tangible and intangible property, used or to be used in intrastate business in this State, was neither an arbitrary, excessive nor unreasonable taking of property beyond the power of the State, a denial of due process or equal protection of the laws in violation of the Constitutions, nor a burden upon interstate commerce (U. S. Const. art. 1, § 8, am. 14, § 1; Mich. Const. 1908, art. 2, § 16; 2 Comp. Laws 1929, § 10138).

9. COSTS—PUBLIC QUESTION—STATUTES.

No costs are allowed in suit to have a statute declared partially invalid, a public question being involved (2 Comp. Laws 1929, § 10138).

Appeal from Ingham; Carr (Leland W.), J. Submitted April 11, 1945. (Docket No. 54, Calendar No. 42,986.) Decided October 8, 1945.

Bill-by Montgomery Ward & Company, an Illinois corporation, against Howard M. Warner, Commissioner of the Michigan Corporation and Securities Commission, for a decree declaring part of 2 Comp. Laws 1929, § 10138, invalid. Decree for plaintiff. Defendant appeals. Decree holding statute invalid vacated and decree entered holding tax valid.

*Shields, Ballard, Jennings & Taber (John A. Barr, Ralph G. Crandall* and *Henry R. Marshall,* of counsel), for plaintiff.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Gregory H. Frederick* and *Daniel J. O'Hara,* Assistants Attorney General, for defendant.

BUSHNELL, J. The issues presented in this appeal were submitted to the trial court on the following stipulation of facts:

1. That at the present time plaintiff owns and operates in the State of Michigan 40 retail stores.

2. That for the fiscal year ended January 31, 1943, plaintiff's Michigan stores made gross sales in the amount of $36,273,232, on which plaintiff realized a net profit in excess of $4,000,000.

3. That for the fiscal year ended January 31, 1944, plaintiff's Michigan stores made gross sales in the amount of $36,163,804, on which plaintiff realized a net profit in excess of $3,000,000.

4. That on January 31, 1944, plaintiff had assets located in Michigan of the following description and value, and that plaintiff's present assets in Michigan are substantially identical therewith:

| | |
|---|---|
| Merchandise inventory | $5,252,000 |
| Land | 324,093 |
| Buildings | 116,000 |
| Fixtures | 684,000 |

The trial judge summarized the matter so clearly that we quote the following from his·opinion:

"The petition of the plaintiff herein asks for a declaration of rights under the statute and for injunctive relief. The material facts involved are covered in part by averments and admissions in the pleadings and otherwise by stipulation. The record discloses that in July, 1934, plaintiff was admitted to carry on a local business in Michigan. At that time its authorized capital stock consisted of 205,000 shares of so-called class A no par value stock and 6,000,000 shares of common stock. At that time all of the class A stock had been issued, and likewise all of the common stock except 1,434,996 shares. The statutory fee was computed, and paid, on the basis of the total authorized capital stock.

"In 1943 plaintiff adopted an amendment to its articles of incorporation increasing the common stock to 10,000,000 shares. A certificate setting forth such amendment was forwarded to defendant for filing, whereupon defendant, acting in accordance with the provisions of the Michigan statute, demanded that plaintiff pay a fee in the sum of $4,458.10. With such request plaintiff declined to comply, instituting the present suit to enjoin an alleged threatened revocation of its license to carry on business in this State and seeking a declaration of rights in the premises.

"The controversy involves the validity of certain provisions of 2 Comp. Laws 1929, § 10138 (Stat. Ann. § 21.203), pursuant to which defendant acted in computing and demanding the fee above referred to. In so far as it is material, said section reads as follows:

"'Every domestic corporation hereafter organized for profit, and every foreign corporation for profit hereafter applying for admission to do business within this State, shall at the time of filing its articles or applying for admission, as the case may be, pay to the secretary of State, as an organization

fee and for the privilege of exercising its franchises within this State, a sum equal to one-half mill upon the dollar for each dollar of the authorized capital stock of such corporation; and each corporation heretofore or hereafter incorporated under the laws of or admitted to do business in this State, shall pay a proportionate fee upon each and any increase in its authorized capital stock made subsequent to the passage of this act: Provided, That in case of a foreign corporation, such fee shall be computed upon that portion of its authorized capital stock represented by the portion of its property, both tangible and intangible used or to be used in its business in Michigan.'

"It is the claim of the plaintiff that, having been admitted to carry on business in the State of Michigan, it was beyond the power of the State to impose on it the additional fee computed on the basis of authorized capital stock, none of the increase authorized having been issued, such fee being computed on the basis outlined in the statute. It is insisted, in substance, that the provision in question violates the provisions of the Federal Constitution relating to interstate commerce, due process of law, and the equal protection of the laws. Counsel for defendant emphasize the fact that the clause assailed was in the statute at the time plaintiff was admitted to this State in 1934; and rely on the decision of the supreme court of the United States in *Atlantic Refining Co.* v. *Virginia*, 302 U. S. 22 (58 Sup. Ct. 75, 82 L. Ed. 24), in which the original entry or franchise fee based on authorized capital stock was sustained as against objections urged against it. It is contended, in effect, that the same principles that determine the powers of a State in imposing conditions on foreign corporations precedent to admission are applicable in the case at bar on the theory that there was no distinction between the grant of the original privilege and the continuation of that privilege. Counsel for plaintiff take exception to this theory, contending that once the

foreign corporation is admitted, its status is altered in such manner as to enable it to assert rights claimed by virtue of the provisions of the Federal Constitution. This suggests, of course, that following the original admission the inherent power of the State to exclude foreign corporations altogether is not involved."

The trial judge held the statute invalid and the State has appealed from the decree entered thereon.

Looking at the question realistically, if plaintiff is correct, incorporators may seek a corporate franchise in a State which offers unusual advantages by way of lower franchise fees, taxes, and more favorable limitation of liabilities, et cetera. It is thus possible for a corporation to be formed in such a State with a nominal capitalization at the time of its organization. Thereafter it may obtain a license to do business in some foreign State or States where it expects to do a very large intrastate business. When the organization of the corporation is fully completed in other States, its authorized capital may then be increased to a larger amount without any obligation for the payment of additional license or admittance fees on such increase. The corporation may thereby use a very large amount of its capital in intrastate business without additional expense, although competing domestic corporations in the latter States might be required to pay a large fee on any sizable increase of capitalization.

2 Comp. Laws 1929, § 10138 (Stat. Ann. § 21.203), became effective on May 20, 1929. This statute does not discriminate against foreign corporations. Although a corporation incorporated in this State is obliged to pay a franchise fee on the entire increase of its authorized capital, a foreign corporation is required to pay only upon the portion of its increased authorized capital which is represented by

the portion of its property, both tangible and intangible, used or to be used, in intrastate business in Michigan.

Plaintiff first sought admission to do business locally in the State of Michigan in 1934, five years after section 10138, *supra,* became effective. In thus seeking admission to do an intrastate business, it tacitly agreed to conform with and abide by the laws of this State which provide for the exaction of additional privilege or admission fees on increases of capital from both domestic and foreign corporations, but more limited in amount as to the latter as hereinbefore set forth.

The case of *Montgomery Ward & Company, Inc.,* v. *Becker,* 334 Mo. 789 (69 S. W. [2d] 674), decided in 1934, as well as some of the other authorities cited, tend to uphold plaintiff's contention that an admission fee may not be based upon the authorized increase of capital even when limited to intrastate business. Plaintiff relies on a number of previous opinions of the supreme court of the United States which have subsequently been questioned by *Atlantic Refining Co.* v. *Virginia,* 302 U. S. 22 (58 Sup. Ct. 75, 82 L. Ed. 24), decided November 8, 1937, and which, we believe, is determinative of the present issue. It was there held that the entrance fee exacted by the State from a foreign corporation was not a tax but was "compensation for a privilege applied for and granted," et cetera. This is the law of Michigan. *In re Detroit & Windsor Ferry Co.,* 232 Mich. 574.

The court further held in the *Atlantic Refining Company Case* that there was no showing that an entrance fee of $5,000, as charged, was "more than reasonable compensation for the privilege granted," and that an entrance fee for the privilege of doing local business measured by the total authorized

capital stock of a foreign corporation having property situated in many States and abroad, and engaged in interstate and foreign commerce, does not necessarily burden such commerce, and a fee so measured is not an arbitrary taking of property beyond the jurisdiction, nor is it arbitrary in amount. The court said (p. 28):

"Third. It is contended that a fee measured solely by the amount of the corporation's authorized capital stock necessarily burdens interstate commerce. In support of that contention it is said that the authorized capital stock represents property located in 47 States and several foreign countries used in both interstate and foreign commerce. But this is not true. Authorized capital has no necessary relation to the property actually owned or used by the corporation; furthermore, the fee for which it is the measure represents simply the privilege of doing a local business. Because the entrance fee does not represent either property or business being done, it is immaterial that in fixing its amount no apportionment is made between the property owned or the business done within the State and that owned or done elsewhere.

"The entrance fee is obviously not a charge laid upon interstate commerce; nor a charge furtively directed against interstate commerce; nor a charge measured by such commerce. Its amount does not grow or shrink according to the volume of interstate commerce or the amount of the capital used in it. The size of the fee would be exactly the same if the company did no interstate commerce in Virginia or elsewhere. The entrance fee is comparable to the charter, or incorporation, fee of a domestic corporation—a fee commonly measured by the amount of the capital authorized. It has never been doubted that such a charge to a domestic corporation, whatever the amount, is valid, although the company proposes to engage in interstate commerce and to acquire property also in other States. No

reason is suggested why a different rule should be applied to the entrance fee charged this foreign corporation.

"Fourth. It is contended that a statute which measures the entrance fee solely by the authorized capital deprives the corporation of its property without due process, because the amount is determined by reference to property beyond the taxing jurisdiction; and also that this charge is an arbitrary taking of property. As has been shown, the amount of the entrance fee is not measured by property, either within or without the jurisdiction; and it is not a tax upon property. It is payment for an opportunity granted. Nor is it a charge arbitrary in amount. The value of the privilege acquired is obviously dependent upon the financial resources of the corporation—not only upon the capital possessed at the time of its admission to do business, but also upon the capital which it will be in a position to secure later through its existing authority to issue additional stock. Obviously, the power inherent in the possession of large financial resources is not dependent upon, or confined to, the place where the assets are located. Compare *Great Atlantic & Pacific Tea Co.* v. *Grosjean,* 301 U. S. 412 (57 Sup. Ct. 772, 81 L. Ed. 1193, 112 A. L. R. 293). Great power may be exerted by the company in Virginia although it has little property located there. And the value to it of the privilege to exert that power is not necessarily measured by the amount of the property located, or by the amount of the local business done, in Virginia. Moreover, it is immaterial whether the opportunity is availed of or not. The State grants a large privilege. It may demand a corresponding price."

It would serve no useful purpose to discuss the many decisions of the supreme court of the United States bearing upon the questions involved in the instant case. Some of the earlier cases, such as *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68 (34

Sup. Ct. 15, 58 L. Ed. 127), tend to uphold defendant's contention. Some subsequent cases set forth in *Cudahy Packing Co.* v. *Hinkle,* 278 U. S. 460 (49 Sup. Ct. 204, 73 L. Ed. 454), tend to condemn such fee as unconstitutional. In the latter case, however, there is a strong dissenting opinion by Mr. Justice Brandeis, in which Mr. Justice Holmes joined. Many of the former decisions of the supreme court of the United States are there reviewed. It may be noted that many of the earlier cases have to do with public utilities and other corporations which conduct large interstate businesses throughout the country. However, in *Atlantic Refining Co.* v. *Virginia, supra,* the court unanimously held that an admittance fee based upon the authorized but not issued capital, was not an arbitrary taking of property beyond the power of the State, neither was the fee arbitrary nor excessive in amount.

In *Lincoln National Life Insurance Co.* v. *Read,* 325 U. S. 673 (65 Sup. Ct. 1220, 89 L. Ed. 673), the question was presented whether the State of Oklahoma had denied appellant the equal protection of the laws in violation of the Fourteenth Amendment when appellant, an Indiana corporation, after having obtained a license to do business in Oklahoma in 1919, in accordance with the laws thereof, was required annually to pay a fee for the renewal of its license. This fee was based upon a percentage of all premiums received in Oklahoma during the preceding year, after cancellations were deducted. Such fee applied solely to foreign insurance companies. In April, 1941, Oklahoma doubled the gross premium tax required of foreign insurance companies, in order to secure a renewal of their licenses. The supreme court of the United States upheld the decision of the State supreme court and denied recovery of taxes paid under protest on in-

surance premiums collected subsequent to the effective date of the act which increased the tax, and distinguished *Hanover Fire Ins. Co.* v. *Harding,* 272 U. S. 494 (47 Sup. Ct. 179, 71 L. Ed. 372, 49 A. L. R. 713), one of the authorities on which plaintiff relies in the instant case. The court held in the *Hanover Case* that the insurance company had obtained an unequivocal license to do business in a foreign State and, after building up that business, was subjected to discriminatory taxation when its license fee was increased.

In the instant case the license granted plaintiff by the State of Michigan was not unequivocal, inasmuch as the statute, at the time of plaintiff's admission to do business in this State, provided it would be required to pay additional fees based upon that portion of the increase of its authorized capital stock used or to be used in the State of Michigan.

For the reasons hereinbefore stated, we conclude that the additional fee imposed on plaintiff is neither an arbitrary taking of property beyond the power of the State nor a violation of either article 2, §16, of the Constitution of the State of Michigan, nor of section 1 of the Fourteenth Amendment of the Constitution of the United States. Such fee does not deny plaintiff equal protection of the laws in violation of the Fourteenth Amendment of the Constitution of the United States. Nor does it constitute a burden on interstate commerce in violation of Article 1, § 8, of the Constitution of the United States. The fee exacted is neither excessive nor unreasonable in amount. It is limited to that part of the increase of the authorized capital used or to be used in the State of Michigan. It does not affect the interstate business of plaintiff.

The decree appealed from is reversed but without costs, a public question being involved. A de-

cree in accordance with this opinion may be entered in this court.

STARR, C. J., and NORTH, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.