**MALLINCKRODT, INC., Appellant,**

v.

**DIRECTOR OF REVENUE, et al., Respondents.**

No. 72732.

Supreme Court of Missouri, En Banc.

April 9, 1991.

Juan D. Keller, Donald L. Mariotto, St. Louis, for appellant.

William L. Webster, Atty. Gen., Carole Lewis Iles, Asst. Atty. Gen., Jefferson City, for respondents.

ROBERTSON, Judge.

At issue in this case is the constitutionality of Missouri's domestication tax imposed by Section 351.585.4, RSMo, on foreign corporations seeking authority to conduct business in Missouri. Mallinckrodt, Inc., contends that Section 351.585.4 violates the Equal Protection Clauses of the United States Constitution amendment XIV, section 1, and Missouri Constitution article I, section 2. The Administrative Hearing Commission (the Commission) denied Mallinckrodt's claims, refusing to consider the constitutional issues on the authority of *City of Joplin v. Industrial Commission of Missouri*, 329 S.W.2d 687 (Mo. banc 1959), and *State Tax Commission v. Administrative Hearing Commission*, 641 S.W.2d 69 (Mo. banc 1982). Mallinckrodt filed a timely petition for review in this Court seeking a construction of the revenue laws of this state. This Court has exclusive appellate jurisdiction. Mo. Const. art. V, secs. 3 and 18; Section 621.189, RSMo 1986. Affirmed.

I.

The facts in this case are uncontroverted. In December, 1985, Malco, Inc., a wholly-owned Delaware subsidiary of Mallinckrodt, Inc., a Missouri corporation, filed an application for a certificate of authority to transact business in Missouri with the Missouri Secretary of State. Malco's application for domestication showed $1,000 in stated capital and that the value of its property in Missouri did not exceed the value of its stated capital in surplus, that is, $1,000. Pursuant to Section 351.585.4, Malco paid a domestication fee of $49,885

based on its estimate of the value of the property it expected to hold in Missouri during 1986.

On January 2, 1986, Mallinckrodt transferred its assets and liabilities to Malco. Mallinckrodt changed its name to M.I. Holdings, Inc.; Malco changed its name to Mallinckrodt, Inc.

Mallinckrodt timely requested a refund of its domestication fee, together with interest. After the Director of Revenue denied the request, Mallinckrodt filed a complaint with the Commission. The Commission, as previously indicated, refused to consider the constitutional questions raised by Mallinckrodt and determined that the Director of Revenue and the Secretary of State had properly collected the domestication tax from Mallinckrodt in accordance with Section 351.585.4.

Mallinckrodt contends, and the Director of Revenue agrees, that had it been a domestic company seeking incorporation in Missouri, the fee charged for the privilege of doing business in this state would have been but $53.00. It is the difference in the fee actually charged, $49,885, and that which would have been charged a domestic company seeking incorporation, $53.00, that forms the basis for appellant's claims that Missouri discriminates against foreign corporations seeking to do business in this state in violation of Equal Protection.

## II.

Section 351.585.4 provides for an initial domestication tax on foreign corporations as a condition to their securing a certificate of authority to transact business in Missouri.

Such corporation shall be required to pay into the state treasury upon the proportion of its stated capital and surplus represented by its property and business in Missouri a domestication tax or fee equal to the incorporating tax or fee of corporations formed under or subject to this chapter, ...; except that, the value of the proportion of the stated capital and surplus of such corporation represented by its property and business in Missouri shall, in no event, be less than the value

of the corporation's property located in the State of Missouri.

Section 351.065.1 provides for an incorporation tax on domestic corporations:

No corporation shall be organized under the general and business corporation law of Missouri unless the persons named as incorporators shall at or before the filing of the articles of incorporation pay to the director of revenue three dollars for the issuance of the certificate and fifty dollars for the first thirty thousand dollars or less of the authorized shares of the corporation and a further sum of five dollars for each additional ten thousand dollars of its authorized shares.

Mallinckrodt's constitutional attack proceeds as follows: The exaction required by Section 351.585.4 of foreign corporations seeking to domesticate in Missouri is a tax, not a fee; domestic companies incorporated in Missouri pay a much smaller incorporation tax; the difference between the tax imposed on foreign corporations and domestic companies seeking incorporation is discriminatory in violation of the Equal Protection Clause as interpreted by the United States Supreme Court in *Western & Southern Life Insurance Co. v. State Board of Equalization*, 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981).

As will be explained more fully below, appellant's argument fails for two reasons: First, its premise is incorrect. Section 351.585.4 imposes a fee not a tax upon foreign corporations seeking the privilege of doing business in this State. Second, *Western & Southern* simply does not stand for the proposition for which appellant cites it. Indeed, *Western & Southern* does not consider the question whether and in what amount the Equal Protection Clause permits a state to impose a one-time domestication fee for the privilege of doing business in that state.

## A.

In *Roberts v. McNary*, 636 S.W.2d 332, 335, 336 (Mo.banc 1982), this Court examined the distinction between a tax and a

fee: "Taxes are 'proportional contributions imposed by the state upon individuals for the support of government and for all public needs.' ... Taxes are not payments for a special privilege or a special service rendered." On the other hand, fees are "charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose." [citations omitted.] Similarly, in *Atlantic Refining Co. v. Virginia*, 302 U.S. 22, 26, 58 S.Ct. 75, 77, 82 L.Ed. 24 (1937), the United States Supreme Court determined that a payment required of a foreign corporation for the privilege of conducting business within Virginia was a fee. "[T]he entrance fee is not a tax, but compensation for a privilege applied for and granted." We see no reason to depart from these precedents which place the determination of whether a governmental levy is a tax or a fee on purpose and function and not on nomenclature chosen to support a legal argument.

By its purpose, Section 351.585.4 requires a foreign corporation seeking domestication in Missouri to pay a one-time tribute to Missouri for the privilege of obtaining authority to transact business here. We hold that Section 351.585.4 imposes a fee, not a tax. Subsequent analysis in this case rests on this holding.

### B.

Mallinckrodt's insistence that the Section 351.585.4 domestication fee is a tax renders its reading of *Western & Southern* fatally myopic.

In *Western & Southern*, California imposed two insurance taxes on insurance companies doing business in the state. Foreign insurance companies were required to pay, in addition to the state's premium tax, a "retaliatory" tax, set by California statute "in response to the insurance tax laws of the insurer's home State." 451 U.S. at 650, 101 S.Ct. at 2073. The court concluded that the Equal Protection Clause prohibits a state from imposing "more onerous taxes or other burdens on foreign corporations than those imposed on domestic corporations, unless the discrimination between foreign and domestic corporations bears a rational relation to a legitimate state purpose." *Id.* at 668, 101 S.Ct. at 2083.

*Western & Southern* is not a case in which a foreign corporation is seeking authority to conduct business in a state. Instead, *Western & Southern* considers discrimination between foreign and domestic corporations which have already received California's blessing to conduct business there. For this reason, *Western & Southern* makes no attempt to consider the constitutionality of a state imposing a higher fee on a foreign corporation seeking authority to conduct business within the state than is imposed on a domestic entity incorporating within that state under the Equal Protection Clause.

Mallinckrodt's apparent confusion is founded in *Western and Southern*'s attempts to bury, finally, the constitutional theory expressed in *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 19 L.Ed. 357 (1869). Paul holds that a state's authority to exclude foreign corporations entirely also permits the state to impose financial and other burdens on a domesticated corporation as it chooses irrespective of its treatment of domestic corporations. As has been previously stated, *Western & Southern* repudiates the power of a state to discriminate by taxation against domesticated corporations, once domesticated.

*Western & Southern*, however, does not treat the first part of the Paul formula relating to the power of a state to exclude or erect barriers to the domestication of a foreign corporation. In its penultimate holding, *Western & Southern* assumes the constitutional power of the state to erect barriers to domestication, saying "whatever the extent of a State's authority to exclude foreign corporations from doing business within its boundaries" and concludes that the state may not impose greater tax burdens on foreign corporations than it does on domestic corporations. *Id.* 451 U.S. at 667–8, 101 S.Ct. at 2083. This is shown more clearly as *Western & Southern* quotes approvingly from *WHYY, Inc.*

*v. Glassboro,* 393 U.S. 117, 119, 89 S.Ct. 286, 287, 21 L.Ed.2d 242 (1968).

This court has consistently held that while a state may impose conditions on the entry of foreign corporations to do business in this state, once it has permitted them to enter, 'the adopted corporations are entitled to Equal Protection with the state's own corporate progeny, at least to the extent that their property is entitled to an equally favorable ad valorem tax basis.'

*Western & Southern,* 451 U.S. at 648, 101 S.Ct. at 2072, quoting *WHYY, Inc.,* and citing, among other cases, *Hanover Fire Ins. Co. v. Harding,* 272 U.S. 494, 47 S.Ct. 179, 71 L.Ed. 372 (1926).

*Hanover Fire,* which remains the law, states:

In subjecting a law of the State which imposes a charge upon foreign corporations to the test whether such a charge violates the equal protection clause of the Fourteenth Amendment, a line has to be drawn between the burden imposed by the State for the license or privilege to do business in the State, and the tax burden, which, having secured the right to do business, the foreign corporation must share with all the corporations and other taxpayers of the State. *With respect to the admission fee, so to speak, which the foreign corporation must pay,* to become a quasi citizen of the State and entitled to equal privileges with the citizens of the State, the measure of the burden is in the discretion of the State, and *any inequality as between the foreign corporation and the domestic corporation in that regard does not come within the inhibition of the Fourteenth Amendment.*

[Emphasis added.] *See also Atlantic Refining Co.,* 302 U.S. at 32, 58 S.Ct. at 79, citing *Hanover Fire* with approval.

On the strength of this precedent, it appears to us that the Equal Protection Clause does not apply to the question whether a state may impose a higher fee on a foreign corporation seeking authority to do business within a state than is imposed on domestic companies seeking to incorporate within that state. It is only after the corporation's admission to the state that Equal Protection applies and the domesticated corporation may constitutionally demand equal treatment with a domestic corporation. This being the case, we need not consider whether the fee charged appellant in this case is rationally related to a legitimate state purpose.

We hold that Section 351.585.4 violates neither United States Constitution amendment XIV, section 1, nor Missouri Constitution article I, section 2.

III.

The decision of the Administrative Hearing Commission is affirmed.

BLACKMAR, C.J., RENDLEN, HIGGINS, COVINGTON and HOLSTEIN, JJ., and SHANGLER Special Judge, concur.

BILLINGS, J., not sitting.